## CITY OF MUSKOGEE et al. v. BURFORD et al.

No. 8739. Opinion Filed Oct. 28, 1919.

Second Petition for Rehearing Denied Feb. 10, 1920.

(Syllabus by the Court.)

**1. Municipal Corporations—Paving—Special Assessment—Estoppel.**

Where jurisdiction is conferred upon a municipal body to provide for paving its streets and to charge the cost thereof against the property benefited, according to the method provided by law, a property owner who stands by while such work is being prosecuted, with full knowledge that large expenditures are being made for such improvement which will benefit his property, or upon

due notice, fails to appear at the proper time and before the tribunal prescribed by law, and present his objections, if he have any, will not. after the work is completed, be afforded relief by injunction against assessments levied against the property benefited to pay for such work.

## 2. Same—Remedy Against Assessment — Statute—Validity.

Section 728, Snyder's Compiled Laws 1909 (sec. 644, Rev. Laws 1910), is not unconstitutional, and does not deprive persons of their property without due process of law.

## 3. Same—Injunction—Doing Equity.

Unless the whole assessment for the purpose of grading, curbing, draining and paving a street is void, a case for injunction cannot be maintained, for he who seeks equity must do equity. If any part of the assessment against the owner's land is valid, he cannot have an injunction unless he has paid or offered to pay such part as is valid.

## 4 Same—Statute of Limitations.

"No suit shall be sustained to set aside any such assessment, or to enjoin the mayor and council from making any such improvement, or levying or collecting any such assessments, or issuing such bonds, or providing for their payments as herein authorized, or contesting the validity thereof on any ground or for any reason other than for the failure of the city council to adopt and publish the preliminary resolution provided for in section two (723) in cases requiring such resolution and its publication and to give the notice of the hearing on the return of the appraisers provided for in section five (726) unless such suit shall be commenced within sixty (60) days after the passage of the ordinance making such final assessment."

## 5. Appeal and Error—Evidence—Review.

In an action of equitable cognizance, this court has the right and power to consider the whole record and weigh the evidence, and if the judgment and decree of the trial court is clearly against the weight of the evidence, cause to be rendered such judgment as the trial court should have rendered.

Record examined in the instant case and the judgment and decree held to be clearly against the weight of the evidence, cause reversed and remanded with directions.

Error from District Court, Muskogee County; R. P. de Graffenried, Judge.

Action by G. E. Burford and others against the city of Muskogee and others. From judgment for plaintiffs, the defendants bring error. Reversed and remanded.

Chas. A. Moon, Jas. C. Davis, and G. A. Paul, for plaintiffs in error.

George B. Rittenhouse, B. B. Wheeler, William Neff, and L. E. Neff, for defendants in error.

JOHNSON, J. This suit was commenced by G. E. Burford and 53 other persons against the city of Muskogee, Charles Wheeler, Jr., city clerk, and Connell Rogers, county treasurer. The purpose of the action was to enjoin the collection of the assessments made against property located in Improvement District No. 118, in the city of Muskogee.

This suit was commenced by the plaintiffs filing their petitions in the district court of Muskogee county on the 10th day of September, 1915. On the filing of said petition the judge of said court issued a temporary injunction enjoining defendant Connell Rogers, as county treasurer, from selling or advertising for sale or issuing tax deeds upon any of the property described in the plaintiffs' petition for the non-payment of delinquent installments of special assessments in Improvement District No. 118, in the city of Muskogee, and enjoining the defendant, Chas. Wheeler, Jr., as city clerk, from collecting or attempting to collect any of the special assessments of said district during the pendency of the action.

The cause proceeded to trial to the court on the 27th day of April, 1916, and at the conclusion of the trial thereafter on the 19th day of May, 1916, the court rendered judgment decreeing that the temporary injunction theretofore granted be made permanent and perpetual against the defendants, restraining them from collecting or attempting to collect any part of the assessments levied against plaintiffs' property situated in Improvement District No. 118, in said city.

There was no request for separate findings of fact and conclusions of law by either party and the court made none, but in the journal entry of judgment rendered on said date, the court. made the following general findings:

"And now on this 19th day of May, 1916, the court heard the further argument of counsel and having carefully considered and weighed the evidence introduced and the arguments of counsel and being fully advised in the premises, finds that the court has complete jurisdiction of the subject-matter of this suit and of the persons of all the parties thereto, and under the law and the evidence finds all the issues and the equities in this cause to be in favor of the plaintiffs and against the defendants and that the assessments complained of in plaintiffs' petition, against the property hereinafter described are illegal and null and void and that the plaintiffs are entitled to the relief prayed for in said petition against the defendants and their successors in office."

The defendants filed their motion for a

new trial on the 20th day of May, 1916, and as grounds for such motion, alleged:

(1) That said judgment is contrary to law.

(2) That said judgment is contrary to the evidence.

(3) That said judgment is contrary to both the law and the evidence.

(4) That the court erred in rendering judgment in favor of the plaintiffs and against the defendants.

(5) That the court erred in granting a permanent injunction against the defendants and their successors in office.

(6) That the court erred in holding that said assessments involved in this cause are null and void and uncollectable.

—which was overruled by the court on June 5, 1916, to which defendants excepted, and were granted time to make and serve case-made, and to reverse the judgment. The defendants commenced proceedings in error in this court by filing their petition in error on November 6, 1916, with case-made attached, and assign error as follows:

1. That the court erred in overruling the motion of the defendants and each of them in said cause.

2. That said judgment is contrary to law.

3. That said judgment is contrary to the evidence.

4. That said judgment is contrary to the law and evidence.

5. That the court erred in rendering judgment in favor of the plaintiffs and against the defendants.

6. That the court erred in granting a permanent injunction against the defendants and their successors in office.

7. That the court erred in holding that said assessments involved in this cause are void and uncollectable.

It appears from the record that the proceedings out of which this action arose were commenced as to certain streets in Paving District No. 118, on the 21st day of November, 1910, and as to certain other streets in said district on the 19th day of December, 1910, by the adoption by the mayor and city council of the city of Muskogee of a resolution on each of the said dates, declaring the necessity of the improvement by paving, grading, macadamizing, guttering, curbing, draining and otherwise improving said streets described in same, all in accordance with sections 723, 724, 725, 726, 727, and 728, of Snyder's Compiled Laws of Oklahoma, 1909.

In each of said resolutions the owners of land liable to such assessment, were given 15 days from the 3rd day of December and the 31st day of December, respectively, to file with the city clerk their protest in writing against such improvement, and providing upon the failure of the owners of more than one-half the area of the land liable to assessment to file their protest, the mayor and council should have the power to cause such improvements to be made, and contract therefor and levy assessments as provided by law.

And thereafter, on the 27th day of February, 1911, the mayor and council adopted a resolution to proceed with the work of said improvement and directed the preparation of plans and specifications and complete estimates of the cost of such improvement by the city engineer, and provided for notice to bidders and the execution of construction and maintenance bonds by the successful bidders. Pursuant to said last resolution the city engineer submitted to the mayor and council a complete estimate of the cost of said improvement together with plans and specifications for such work, which were adopted by resolution of the mayor and council. This resolution contained recitals that said resolution adopted November 21, 1910, was published in six consecutive issues of the Muskogee Times-Democrat, a daily newspaper published and having a general circulation in said city, and that said council finds that no protest in writing against such improvement had been filed with the city clerk, and the council determined to proceed with the improvement, and in the first section of this resolution described with common certainty the character of work to be done and the streets that were to be improved, the kind of paving and the width thereof and the recital creating Improvement District No. 118. Section Two: The city clerk had advertised according to law for sealed proposals by contractors for the furnishing of material and performing the work necessary for making such improvement. Section Three required certified check for $3,000 payable to the city to be required to accompany each proposal and that the successful bidder be required to execute to the city a good and sufficient bond in the amount approximately equal to 25 per cent. of the whole bid for the full and faithful execution of the work and to indemnify the city and all property owners' interests against any loss or damage by reason of the negligent execution of the work and of any inferior material and before the allowance of the first estimate of said work to execute to the city of Muskogee a good and sufficient bond in the amount approximately equal to 10 per cent. of the whole bid

conditioned for the maintenance in good condition and the improvement to be approved by the mayor and council, and that such contractor should accept in payment of the contract at their par value street improvement bonds to be issued as in the act approved April 17, 1908, provided, except such portions as he should be entitled to on special assessments which should be paid by the owners of the property assessed before the issuance of the bonds, said payments to be made said contractor in installments on estimates of the city engineer as work progressed, providing that 10 per cent. of said assessment should be retained by the city until the final completion of the work and its acceptance by the mayor and council. Such contractor should be required to take and to pay for at their par value such improvement bonds issued and provided in such act to pay for the costs of construction and other expense incident to such improvement in an amount approximately equal to 4 per cent. of the estimated cost of said improvement.

Pursuant to said last resolution the city engineer submitted to the mayor and council a complete estimate of the cost of such improvement together with plans and specifications of said work, which were adopted by resolution of the mayor and council, and such estimate was in words and figures as follows:

Engineering Department
City of Muskogee,

Telephone 1448.

Muskogee, Okla., Feb. 27th, 1911.

Subject.

Estimate cost of Improvement District No. 118.

20 cubic yards class C sewer excavation, at $3.00, $60.00.

8,600 cubic yards class A excavation, at 35 cents, $3,010.00.

150 cubic yards class B excavation, at $1.00, $150.00.

800 cubic yards class C excavation at $1.60, $1,280.00.

410 lineal feet curb at 40 cents, $164.00.

1,590 square yards asphalt macadam, at $1.40, $2,226.00.

9,320 lineal feet curb and gutter, at 65 cents, $6,058.00.

14,240 square yards sheet asphalt pavement, at $2.00, $28,480.00.

Four manholes adjusted to grade at $3.00, $12.00.

One lamphole adjusted to grade, at $1.00, $1.00.

1,000 square feet reset walk, at 8 cents, $80.00.

270 square feet new walk, at 14 cents, $37.80.

100 lineal feet 6-inch W. S. pipe, at 70 cents, $70.00.

Forty water connections at $8.00, $320.00.

One manhole at $35.00, $35.00.

Two catch basins at $25.00, $50.00.

160 lineal feet 1 2-inch W. S. pipe, at 20 cents, $144.00.

Total, $42,177.80.

Engineering 8c—4 per cent., $1,687.11.

Total $43,864 91.

Approved.

(Signed) T. B. Clonts, City Engineer.

That thereafter, on March 28, 1911, the mayor and city council accepted a proposal of and a contract was entered into between the city and Heman Construction Company, for the construction of said work, and on May 8, 1912, the mayor and council by resolution, appointed appraisers to appraise and apportion the benefits to the said property liable for assessment for the costs of such improvement. Paragraph 12 of the contract entered into between the city and the Heman Construction Company, specified the contract price per unit for such improvement, which is as follows:

Twelfth. In consideration of the completion by the said contractor of all work included in this contract in conformity with the specifications hereinbefore referred to, the city hereby agrees to pay to said contractor the following prices:

For each square yard of asphalt macadam pavement, one and 35/100 ($1.35) Dollars.

For each square yard of Trinidad asphalt pavement, one and 99/100 ($1.99) Dollars.

For each cubic yard of class A excavation, thirty-five cents (35c).

For each cubic yard of class B excavation, one and 00/100 ($1.00) Dollars.

For each cubic yard of class C excavation, one and 50/100 ($1.50) Dollars.

For each cubic yard of class C excavation, in sewers, three and 00/100 ($3.00) Dollars.

For each lineal foot of combined curb and gutter, sixty-five cents. (65c.)

For each lineal foot of curb only, forty cents. (40c.)

For each manhole complete, thirty-five and 00/100 ($35.00) Dollars.

For each lamphole adjusted, one and 00/100 ($1.00) Dollars.

For each catch basin complete, including cast iron top and inlet, twenty-five ($25.00) Dollars.

For each lineal foot of 6-inch lateral sewer, including excavation and backfill, sixty-eight cents. (68c.)

For each square foot of cement sidewalk, fourteen cents. (14c.)

For each square foot of cement sidewalk, reset, 8 cents. (.08.)

For each manhole and street inlet adjusted to grade, three and no/100 ($3.00) Dollars.

For each 3-4 inch water tap service pipe and box complete, eight and no/100 ($8.00) Dollars.

On June 25, 1912, the city engineer rendered to the mayor and city council a final estimate showing the total amount of the improvement done in said Improvement District No. 118, by the contractor and prices for such work, which was approved by the mayor and council, and which final estimate is as follows:

Defendant's Exhibit "B."

Street Improvement District No. 118.

The City of Muskogee, Oklahoma, Heman Construction Co.,

Estimate No. 1 and Final for Month Ending June 25th, 1912.

Sheet No. 2.

Class A excavation, 8,466.5 cubic yards, at 35 cents, $2,963.28.

Class B excavation, 3,688.1 cubic yards, at $1.00, $3,688.10.

Class C excavation, 2,794.0 cubic yards, at $1.50, $4,191.00.

Class C in sewers, 2-foot, 232.5 cubic feet, at $3.00, $696.90.

Asphalt pavement, square yards 14,645.9 at $1.99, $29,105.54.

Asphalt macadam, square yards, 1,664.15, $1.35, $2,246.60.

Curb and gutter, lineal feet, 9,373, at 0.65, $6,092.45.

Curb, lineal feet, 461.3, at 0.40, $184.52.

Six-inch W. S. pipe, lineal feet, 1,087.0, at 0.68, $739.16.

Cement walk, square yards, 2,010.0, at 0.14, $281.40.

Manholes adjusted, each, 12, at $3.00, $36.00.

Water connections, each, 108, at 8.00, $864.

Amount carried forward, $51,088.95.

Defendants Exhibit "B."

Street Improvement District No. 118.

The City of Muskogee, Oklahoma,

To Heman Construction Co.

June 25th, 1912.

Amt. brought forward_____$51,088.95
Total _____ 51,088.95
Total value of work to date_____ 51,088.95
Four per cent of total for engineer-
ing _____ 2,043.56
Grand total _____ 53,132.51
Amt. due on this estimate_____ 53,132.51
Correct: Charles Schultz, City Engineer.

I, Charles Schultz, do swear that the work and materials included in this estimate are to the best of my knowledge according to the plans and specifications and the quantities approximately correct.

Charles Schultz,
City Engineer.

And thereafter the appraisers made their report to the mayor and city council apportioning the benefits against the abutting property in said district on account of the paving and otherwise improving the said street improvement district, which report, among other things, contained the following recital:

"After having first taken and subscribed an oath to make a true and impartial appraisement and apportionment of the benefit to said district, we met at the City Hall in the city of Muskogee on the 20th day of Feby., 1912, and on each working day thereafter until and including the 13th day of March, 1912, thereafter, and proceeded to make such appraisement and apportionment,"

—which report is full and complete and which was approved by resolution of the mayor and council on the 28th day of June, 1912, in which resolution it was provided that the mayor and clerk be authorized to deliver to Heman Construction Company bonds for Improvement District No. 118, the sum of $52,132.50, the same being the amount found to be due the contractor according to the final estimate of the engineer.

The city engineer reported to the mayor and council that the improvements had been constructed according to contract, his certificate being in words and figures as follows:

Street Improvement Acceptance, City of Muskogee, Oklahoma.

Department of Engineering.

This is to certify that the Heman Construction Co., contractor for Street Improvement District No. 118, comprising Fifth street from Fon Du Lac to Tanora, Tower Hill from Seventh to Fifth, Girard, 5th to 9th, Howard, 5th to 7th, Ninth Terrace Blvd. to Terrace Place; Terrace Place 9th to Tower Hill.

Has completed said improvement district in accordance with the plans and specifications therefor, that a final inspection has been made, and the street found to have been constructed to line and grade and the street cleared of all surplus materials and the parkings properly graded.

We recommend the acceptance of the same.

(Signed) Charles Schultz,
City Engineer.
Theo. W. Gulick,
Commissioner of Public Works and Property

This action was commenced. as before stated, on September 10, 1915. The plaintiffs assailed the validity of the assessments sought to be enjoined by allegations in their petition to the effect that the proceedings had by the mayor and city council were invalid and void, in that said preliminary resolutions did not comply with the laws of Oklahoma, in that they did not specify and describe the improvement proposed to be made, did not describe or determine the limits of said improvements nor the manner of either construction or material to be used therein and said resolutions were wholly insufficient to give the owners of the property liable to pay the costs thereon notice of the kind and character of the improvements purported to be made upon said streets or to give said city council of defendant city jurisdiction or power to levy any assessments to pay the cost thereof upon the property of plaintiffs, and that said pretended second resolution purporting to be based upon said pretended preliminary resolution on November 21, 1910, and December 19, 1910, purporting to create Street Improvement District No. 118, was indefinite and incomplete and did not define the extent, character and width of the improvement nor the materials to be used nor the manner of construction of the alleged improvements to be made upon said streets.

Allegations of the plaintiffs' petition assail the subsequent proceedings of the mayor and council in awarding the contract, charging that the same was awarded without competitive bidding and award thereof was not based upon a proper resolution of the council and was greatly in excess of the estimate of the costs prepared and submitted by the city engineer, and the contract and all subsequent proceedings based on said contract were wholly without jurisdiction and void; that the resolution of the mayor and council appointing appraisers to appraise the benefits to the property affected was insufficient and did not comply with the laws of the state of Oklahoma in having failed to properly describe the lots and tracts of lands to which said appraisement and apportionment of benefits should be made; and said board was never legally appointed and did not act within the limits of the law in their attempt to make an appraisement and apportionment of costs of the improvements, and that the appraisers made no report, in fact that the same was prepared by the attorney of the contractor to whom said work was awarded. and that the same was made without giving the plaintiffs a hearing before the council upon said report, and that said resolution and ordinance were based upon said alleged appraisement and apportionment; that said assessments were not made for public pur-

pose, but were made for a private purpose, to wit, for the benefit of the contractor, and the plaintiffs' property received no benefit therefrom, and that the placing of said assessments upon and against said property has decreased its reasonable cash value by the amount of said assessments and that the enforcement of said assessments would result in the confiscation of plaintiffs' property, and that the amount thereof was greatly in excess of the cost and work contemplated at the time of letting said contract; that said sum was based upon and determined by the statement made and furnished by the city engineer, which statement was false, fraudulent, inaccurate and contained quantities of work greatly in excess of the work done or to be done or provided for under said contract, and that said appraisements and apportionments and assessments levied in pursuance thereto contained large sums purporting to be the cost of work done and material furnished, which were never done or furnished under said contract and which were never contemplated as a part of the work to be done at the time of the letting of said alleged contract, but which sums were falsely, fraudulently, and with intent to cheat and defraud these plaintiffs included in said final estimate or statement of cost as prepared by said city engineer, and that such sum was in excess of $10,000, and that said collusion and fraud were not known to these plaintiffs until less than 60 days before the filing of this suit; that the statutes under which these proceedings were had, violate the 14th Amendment of the Constitution of the United States and are void. There were many other allegations contained in the plaintiffs' petition which were, in effect, a repetition of the charges herein set out, and which are not necessary to mention.

The defendants' answer specifically denies the plaintiffs' allegation and contains allegations that the improvements were constructed according to law, and further pleaded the statute of limitations, and further alleged that during the progress of the work and constructing improvements, and while the same was in progress, the plaintiffs had full knowledge that the property described in the petition would be assessed therefor. but made no objection thereto. entered no protest against and took no step either by law or otherwise to prevent the construction of such improvements until after the work had been entirely completed, and by reason of such silence and acquiescence, plaintiffs were guilty of such laches as will bar them from a recovery, and are now estopped to enjoin the collection and payment of the special assessments levied for the purpose of defraying the costs of making said im-

provements, to which answer the plaintiffs filed a reply consisting of a general denial.

The defendants in error do not discuss the constitutionality of the statute under which these proceedings were had in their brief or cite any authorities supporting their contention, and we will not consider that question further than to say that this court has held otherwise. City of Chickasha v. O'Brien, 58 Okla. 46, 159 Pac. 282.

As we view the record before us, there is but one question for our determination, that is, the sufficiency of the evidence to sustain the judgment of the trial court.

The issues made by the pleadings of the parties were as to the validity or invalidity of the proceedings of the mayor and council in the matter of the improvements in controversy.

The allegations of the plaintiffs challenged the sufficiency of such proceedings from their inception. The trial court's general finding was that under the law and the evidence all the issues and equities in the cause were in favor of the plaintiffs. If such findings were supported by the clear weight or preponderance of the evidence, the judgment of the trial court should be affirmed.

This being a case of equitable cognizance, this court will under the well-established rule announced by a long line of decisions consider the whole record and weigh the evidence, and if the judgment and decree of the trial court is clearly against the weight of the evidence, cause to be rendered such judgment as the trial court should have rendered. Hart v. Frost et al., 73 Oklahoma, 175 Pac. 257; Shock v. Fish, 45 Okla. 12, 144 Pac. 584; Success Realty Co. v. Trowbridge, 50 Okla. 432, 150 Pac. 898.

It is disclosed by the record that the street improvements involved were in Improvement District No. 118, in the city of Muskogee; that the same were initiated under section 723, Snyder's Compiled Laws 1909, by two resolutions of the mayor and council, adopted respectively on November 21, 1910, and December 19, 1910, declaring the necessity for such improvements, each of which was in substantial compliance with such statute, and was published as required by law, and that within the time given, to wit, 15 days, no protest was filed. Thereafter on the 27th day of February, 1911, the mayor and council adopted a resolution to proceed with the improvements, such resolution being in all things, in substantial compliance with the provisions of the statute, and in pursuance of said resolution, the city engineer submitted to the mayor and council an estimate of the cost of such improvements together with plans and specifications, which were adopted by the mayor and council, and thereafter, in pursuance thereof, a contract was awarded for such improvements to Herman Construction Company, and such contract was entered into between the city of Muskogee and said contractor, under which contract the improvement was made and completed by the contractor, and that the mayor and council by proper resolution and ordinance caused the appraisement and apportionment of the benefits to be made as required by law, and that a final estimate of the cost of such improvements was furnished by the city engineer, and that the contract price per unit for such improvements and payment therefor was awarded and the prices charged in the final estimate of the engineer did not exceed the prices stipulated in the engineer's estimate of the cost thereof, but that the total cost of such improvement as approved by the mayor and council and for which assessments and bonds of the city were caused to be issued, did exceed the original estimate of the city engineer to the amount of approximately 20 per cent.

These facts were clearly established by the great weight of the evidence, and in fact, practically without dispute, and the plaintiffs' principal contention urged, is that the judgment of the trial court should be sustained because the aggregate cost of such improvements greatly exceeded the original estimate of the city engineer, and cite in support of such contention the decisions of this court in the cases of Morrow v. Barber Asphalt Co., 27 Okla. 248, 111 Pac. 196; The City of Muskogee et al. v. Nicholson et al., 69 Oklahoma, 171 Pac. 1102; Flanagan v. City of Tulsa et al., 55 Okla. 638, 155 Pac. 542, which were paving cases, and the case of McGrew v. Kansas City, 64 Kan. 61, 67 Pac. 438; Scott v. Hines, 50 Minn. 204, 52 N. W. 523; and Lebberman v. City of Milwaukee, 64 N. W. 112. The facts in these cases are clearly distinguishable from the facts in the instant case and it is so apparent from an examination of these cases that we deem it unnecessary to discuss them in this opinion.

It was not shown upon the trial that notice was not published of the time and place of the meeting of the board of appraisers, but the report of the appraisers, which was very full and elaborate, contained, among other things, the recital that: "After having first taken and subscribed an oath to make a true and impartial appraisement and apportionment of the benefit to said district, we met at the City Hall in the city of Muskogee, on the 20th day of February, 1912, and on each

working day thereafter until and including the 13th day of March, 1912, thereafter, and proceeded to make such appraisement and apportionment." And the evidence discloses that two taxpayers made protests, one of whom, Mr. Sells, afterward withdrew his, testifying that such withdrawal was on account of an agreement had with the contractor. His letter of protest was dated December 30, 1910, concerning the withdrawal of which he stated that he frequently met Mr. Heman and they loafed together considerably and talked about the matter and Mr. Heman joked with him and said his protest was holding up his bond, and then said something about that if the protest was withdrawn he thought from the way the council felt about it, they would take his assessments off, which was, in substance, the conversation.

His letter withdrawing his protest was dated April 22, 1912, which letter was as follows:

Office of Murray C. Sells,

Bonds and Investments.

Muskogee, Okla., April 22nd, 1912.

To the Honorable Mayor and City Council of Muskogee, Oklahoma.

Gentlemen:

After thoroughly investigating the assessment made against the several lots in the vicinity of my property in Street Improvement District No. 118 by the Board of Appraisers, I find that same has been made fairly and according to law and while my assessment is excessive and very **severe,** other properties seem to be in the same class. Therefore, I am willing to bear my share of the burden rather than have other properties in this vicinity assessed higher than my property. Of course I would like very much to have the city, and I think it would only be fair inasmuch as the general public is benefited to as large extent as the property owners for the reason that Terrace Place is a very desirable driveway and not fitting for residences to front on, pay a part of my assessment, but should they do this for me, there are others that would be entitled to the same consideration and if I understand the financial condition of the Street & Bridge Fund, this Honorable body cannot do this.

I respectfully request that this body thoroughly investigate petitions for paving to determine whether or not they are for the benefit of the community rather than for personal interests.

Very respectfully,
M. C. Sells.

The record discloses that the other protest, filed by Mr. Leekley, resulted in modifying his assessments by reducing the assessment against one of his lots in the sum of $100.

Concerning Mr. Leekley's protest, he testified as follows:

Q. Mr. Leekley, at the time the appraisers filed their report in this district and within the time in which you were permitted by law to protest against this assessment, did you make such a protest to the city of Muskogee? A. Yes, sir. Q. State to whom you protested. A. My best recollection the mayor or city council. Q. What was the nature of that protest? A. Against the amount of the appraisement on the property of which I was owner in District No. 118. Q. Tell the court what you did and what the council did relating to that protest. A. Within the time limit being advertised for hearing and making any complaints regarding the spreading of appraisements of benefits, I appeared at the City Hall before Councilman Gulick then who was hearing the protests as to the spreading of the benefits or assessments and made the statement——

Mr. Crump: We object to anything that occurred between the witness and Mr. Gulick for the reason Mr. Gulick would not be authorized to hear protests.

Judge de Graffenried: The objection is sustained.

Mr. Wheeler: I except.

Q. Did you attempt to protest to the council? A. There was no council hearing. Mr. Gulick was hearing—he stated he was hearing——

Mr. Crump: I object.

Judge de Graffenried: The objection is sustained.

Q. Did you appear at the council room at the proper time to protest? A. I did. Q. The only protest you made was as to the assessment against your property? A. Yes, sir. Q. And that was conceded to you? A. How do you mean conceded to me? Q. Your protest was sustained by the council? A. To the extent of one hundred dollars on seventeen hundred on one lot."

This is the only testimony pointed out by the defendants in error in their brief, and we have found no other testimony in the record that in any way impeaches the proceedings of the mayor and council in reference to the proceedings had, in making the improvements in question.

Section 723 of the statute, supra, after providing that the preliminary resolution shall be published in six consecutive issues of a daily newspaper or two successive issues of a weekly newspaper published and having a general circulation within the said city, provides:

"And if the owners of more than one half in area of the land liable to assessment to pay for such improvement of such highway, shall

not, within 15 days after the last publication of said resolution, file with the clerk of said city their protest in writing against said improvement, then the mayor and council shall have the power to cause such improvement to be made and to contract therefor and to levy assessments as herein provided, and any number of streets, avenues, lanes, alleys or any other public places or parts thereof to be so improved may be included in one resolution but such protest shall be made as to each street or other highway separately."

So it is clear to us that this testimony, in view of the foregoing statutory requirements, is entirely insufficient to invalidate the proceedings of the mayor and council and to render same void, and in view of the testimony disclosed by the record, we find that the conclusions of the trial court in finding all the issues in favor of the plaintiffs were clearly against the weight of the evidence.

We find from the evidence disclosed by the record that the mayor and council, in the proceedings, had complied substantially with the requirements of the statute, supra, that all jurisdictional steps were regularly taken; and that no sufficient protest was made by the plaintiffs as required by law, and that the mayor and council acquired jurisdiction to cause the improvements in question to be made, and that the assessments and improvement bonds issued are valid, and that the plaintiffs were chargeable with full knowledge that such improvements were being made and made no sufficient protest thereto. They did not commence this action until nearly three years after the assessments were made, and their alleged cause of action was barred under section 728 of the statute, supra.

We are of the opinion that this case comes clearly within the rule announced by this court in the case of Jenkins v. Oklahoma City, 27 Okla. 230, 111 Pac. 941, wherein Mr. Justice Kane, speaking for the court, said:

"The city council having acquired jurisdiction of the parties and subject-matter in controversy, there is no other question raised that can be reviewed, as the proceeding below must be treated as a collateral attack. The weight of authority is very decidedly in favor of the rule that where there is jurisdiction the property owner who sees the improvement made and offers no objection until after the work has been done, cannot defeat the assessment upon the ground that the proceedings have not been regular."

The plaintiffs in this case are seeking, as was attempted in that case, to set aside the whole of the assessment, and concerning that proposition, the learned Justice said:

"In the instant case, there is no offer on the part of the plaintiff to do equity by offering to pay a part of the assessment justly due. The rule seems to be that unless the whole assessment is void it will not be claimed that a cause for injunction can be maintained, for he who seeks equity, must do equity, but if any part of the assessments against the owner's land is valid, he cannot have an injunction unless he has paid or offered to pay part such as is valid."

This was the holding of this court in the case of the City of Chickasha et al. v. O'Brien et al., 58 Okla. 46, 159 Pac. 282, wherein Mr. Justice Hardy, speaking for this court, said:

"When a city acquires jurisdiction by preliminary proceedings to pave certain of its streets, a property owner who sits by and sees such improvements made, with the knowledge that the city authorities intend to levy and collect a special tax against his property and that those who do such work cannot be compensated in any other way, and there is no objection thereto until complete performance of the work has been made, cannot thereafter maintain an action to enjoin the collection of assessments against his property on the ground of alleged irregularity in the proceedings subsequent to the time that jurisdiction to perform said work had attached."

As to the question of limitation as was pleaded by the defendants in the trial court, section 728 of the statute, supra, provides:

"No suit shall be maintained to set aside any such assessment, or to enjoin the mayor and council from making any such improvement, or levying or collecting any such assessments, or issuing such bonds, or providing for their payments as herein authorized, or contesting the validity thereof on any ground or for any reason other than for the failure of the city council to adopt and publish the preliminary resolution provided for in section 2 (723) in cases requiring such resolution and its publication and to give the notice of the hearing on the return of the appraisers provided for in section 5 (726), unless such suit shall be commenced within sixty (60) days after the passage of the ordinance making such final assessment,"

—citing in support thereof, numerous other decisions of this court. This rule has been adhered to by this court in the recent case of City of Ardmore et al. v. Appollos, 62 Oklahoma, 162 Pac. 211. This statute has been passed upon by this court in numerous cases, which are cited in the case of City of Chickasha v. O'Brien, supra.

We think that on that question this case comes clearly within the rule therein announced.

We therefore hold that the conclusions of fact of the trial court are clearly against the weight of the evidence, and the judgment is therefore reversed and the cause remanded with direction to render judgment in favor of the defendants, dissolving the injunction, and for all costs incurred in both courts.

OWEN, C. J., and KANE, RAINEY, and McNEILL, JJ., concur.