## PARKS v. SINAI OIL & GAS CO. et al.

No. 11057—Opinion Filed July 5, 1921.

Rehearing Denied Nov. 8, 1921.

(Syllabus.)

**1. Appeal and Error—Review—Equity Case.**

In an equity case this court will examine the record, consider the evidence, and render, or cause to be rendered, such judgment as the trial court should have rendered, but will not interfere with the judgment of the lower court, unless the same is clearly against the weight of the evidence.

**2. Oil and Gas—Lease—Extension by Development.**

Where an oil and gas lease contains a provision that it shall remain in force for a term of one year from its date, and so long thereafter as oil or gas, or either of them, is produced from said land by the lessee, it is a condition precedent to the extension of the lessee's right to continue operations beyond the one year that oil or gas should be found upon the premises in paying quantities, within one year from the date of the lease.

**3. Same.**

When gas in paying quantities was found upon the leased premises within one year from the date of said lease, the lessee thereby became vested with a limited estate in the leased premises for further operations in accordance with the terms of the lease, and such right, once vested by discovery of gas in the upper sand, will not be lost if the lessee continues to drill deeper in search of oil or gas in a lower sand, although he does not find oil or gas on the lower sand, within the limitations prescribed by the lease, and if oil or gas in paying quantities is found in the lower sand he is not required to produce gas from the upper sand, but if oil or gas in paying quantities be not found in the lower sand, production from the upper sand could not long be deferred without incurring the penalty of abandonment or forfeiture if forfeiture be prescribed.

**4. Same—Action to Cancel Lease—Judgment—Affirmance.**

Evidence examined, and held, that the judgment of the trial court, not being clearly against the weight of the evidence, will not be disturbed.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Mrs. Laura Parks, for herself, and as trustee and independent executrix of the estate of O. F. Parks, deceased, against the Sinai Oil & Gas Company, a corporation, and W. H. Shackleford, trustee, to cancel oil and gas lease and enjoin drilling. Judgment for defendants, and plaintiff brings error. Affirmed.

West, Sherman, Davidson & Moore, for plaintiff in error.

Belford & Hiatt, Geo. S. Ramsey, Edgar A. de Meules, Malcolm E. Rosser, Villard Martin, and Allyn Shaw, for defendants in error.

NICHOLSON, J. This suit was brought in the district court of Okmulgee county by the plaintiff in error, as plaintiff below, against the defendants in error, as defendants below, to cancel an oil and gas lease covering 160 acres of land in Okmulgee county, and to enjoin the defendants from drilling said land for oil and gas.

It appears that on the 17th day of June, 1916, the plaintiff executed and delivered to one L. C. Belisle an oil and gas lease covering the northeast quarter of section 9, township 15 north, range 11 east, in Okmulgee county, by which it was agreed that said lease should remain in force for a term of one year from its date, and as long thereafter as oil and gas, or either of them, was produced from said land by the lessee. Subsequently, said L. C. Belisle transferred and assigned all his right, title, and interest in said lease to the defendant Sinai Oil & Gas Company, and in May, 1917, the Sinai Oil & Gas Company entered into a contract with one B. L. Carpenter by the terms of which he was to drill a well on said land, and receive in payment therefor an assignment of said lease in so far as it affected 80 acres of said land; said well to be drilled on the 80 acres assigned to Carpenter.

It further appears that Carpenter would not undertake to drill a well within the short time the lease ran unless the plaintiff would agree to grant him an extension of said lease, in so far as is covered the 80 acres upon which the well was located. This plaintiff agreed to do, and in carrying out said agreement executed to him a lease covering 80 acres, which lease bore date June 17, 1917, and was for a term of 60 days from that date, and so long thereafter as oil and gas, or either of them, was produced from said land by the lessee, or his assigns, in paying quantities, and in which it was provided: "In no event and under no circumstances shall this instrument become effective until the expiration of June 17, 1917." Drilling was commenced on June

4th or 5th, 1917, and the well was completed as an oil well on June 29, 1917.

The plaintiff contended that neither oil nor gas was produced during the term of the first lease, and therefore she was entitled to a cancellation thereof. While the defendant W. H. Shackleford, trustee, claimed that gas in paying quantities was discovered during the life of said lease, and on June 9, 1917, at a depth of 465 feet that said gas was cased off and the well deepened to the oil sand, which was reached at a depth of 1,865 feet, this depth being reached on June 22nd, or 23rd, 1917, and the well was drilled to a total depth of 1,880 feet, and was shot on June 29, 1917. The Sinai Oil & Gas Company filed a disclaimer and its interest in the lease having been acquired by the defendant W. H. Shackleford, trustee, the trial court found generally for said defendant and entered a decree quieting the title to said lease in him as to the 80 acres not owned by Carpenter.

For a reversal, the plaintiff contends, first, that if the trial court predicated its decree on the theory that the evidence showed the production of either oil or gas in paying quantities prior to June 17, 1917, such decree is contrary to the evidence; and, second, if the decree is based on the mere discovery of gas, and that the fact of such discovery alone was sufficient to continue the lease in force after the fixed term, then the decree is not supported by, and is contrary to, the law. The findings of the trial court were general, and we are, of course, unable to determine upon which theory he based his judgment.

In an equity case, as this is, this court will consider the entire record, will weigh the evidence, and if the findings and judgment of the trial court are clearly against the weight of the evidence, will render, or cause to be rendered, such judgment as the trial court should have rendered. Schock v. Fish, 45 Okla. 12, 144 Pac. 584; City of Muskogee v. Burford, 77 Okla. 174. 186 Pac. 949; Nowka v. West, 77 Okla. 24, 186 Pac. 220.

We have examined the record, and the evidence discloses that the well was drilled by C. E. Suppes, under the direction of B. L. Carpenter. Suppes identified the log of the well as a correct record, and this log fails to make any mention of gas until a depth of 1,833 feet had been reached, but shows a salt sand from 465 to 485 feet. In addition to the log, the plaintiff introduced as witnesses two members of the casing crew, who testified that they assisted in setting the casing in the well on June 13, 1917, and that

they detected no gas on that date. Three or four other witnesses testified that they worked at, or were around the well, and that no gas was discovered until that found at 1,833 feet. The plaintiff and W. H. Sanderson, her agent, both testified that B. L. Carpenter told them that there was not enough gas in the well to pay. On the other hand, witnesses for the defendants, including C. E. Suppes, the contractor, and the drillers and tool dressers, testified that gas was found just above the salt sand at 465 feet, and they estimated the flow at from one and one-half million to two million cubic feet per day. Some of the witnesses testified that it blew the water from the well. A summary of the evidence on behalf of the defendants indicates that gas in paying quantities was discovered at 465 feet.

There is a sharp conflict in the evidence. If the evidence introduced on behalf of the plaintiff is true, then no gas, of any consequence at least, was found. If the evidence of the witnesses for the defendants is to be believed, gas in paying quantities was discovered during the life of the lease, and was cased off or drowned out by the water in the well. We are not prepared to say whose witnesses told the truth, and whose were mistaken. The trial court heard their testimony, observed the demeanor of the witnesses on the stand, and was in a position to judge as to their credibility. He found for the defendants, and as his findings and judgment are not clearly against the weight of the evidence, the same will be sustained by this court. Prowant v. Sealy, 77 Okla. 244, 187 Pac. 235; Swan v. Duncan, 78 Okla. 305, 190 Pac. 678.

Passing to the second contention of the plaintiff—that "If the decree is based on the mere discovery of gas, and that the fact of such discovery alone was sufficient to continue the lease in force after the fixed term, then the decree is not supported by, and is contrary to, the law"—we repeat that we are unable to say upon what theory the trial court proceeded, but he must have found that gas was produced during the life of the lease. That was the averment of the defendant in his answer. As before stated, the findings were general, and if gas was produced in paying quantities within one year from the date of the lease, the defendant became vested with a limited estate in the leased premises for further operations in accordance with the terms of the lease, and such right, once vested by the discovery of gas in the upper sand, was not lost by the lessee continuing to drill deeper in search of oil or gas in a lower sand, although he did not find oil or gas in the lower sand within the limitations prescribed by the lease. Roach v. Junction Oil & Gas Co. et al., 72 Oklahoma, 179 Pac. 934; Eastern Oil Co. v. Coulehan (W. Va.) 64 S. E. 836.

The evidence discloses that oil was found in the lower sand and that the same is being produced, and the defendant's interest having vested by reason of the discovery of gas in the upper sand, he is entitled to develop the land under the terms of said lease.

The judgment of the trial court is affirmed.

PITCHFORD, V. C. J., and McNEILL, ELTING, and KENNAMER, JJ., concur.