### CORDILLA v. TAYLOR.
No. 27399.     Oct. 5, 1937.

60 witnesses testified, most of them Indians. Some of the witnesses were Apaches, Tonkawas, Otoes, and Seminoles. Many were unable to speak or understand the English language, and they testified by an interpreter. The testimony of the witnesses was in sharp conflict as to the essential facts.

There is evidence that after the divorce was granted, Washington and Molleah lived together as husband and wife. Willie was born in September, 1915. The record shows that after Washington returned from Tonkawa he became ill and Molleah took him to her home and cared for him for about a month before he died, and that he died at her home. On September 12, 1917, Molleah made sworn proof of heirship of Washington, in which she stated that she was his wife.

A number of the witnesses testified that the deceased, Washington Taylor, and the defendant, Effie Cordilla, nee Miles, were married in September, 1915, by an Indian custom ceremony, at a feast given by Pete Depee, an Iowa Indian residing among the Tonkawas, at his home, and that Depee performed the ceremony and gave them $5 as a wedding present. On the contrary, witnesses testified for the plaintiffs that they were present at said feast and that no such marriage took place, and that they never heard of such marriage. The defendant's mother testified that Washington and Effie were married at an Indian stomp dance, but that before the marriage both Washington and Effie asked her and her husband, George Miles, if they could have their consent to become husband and wife, and that consent was given, and that Washington and Effie then began living together as husband and wife at the home of her parents, and that Washington bought her clothes and groceries, and she went to dances and town with him. Her testimony was confusing and unsatisfactory and indicates that she is very illiterate. When she was first on the stand she would answer no questions on cross-examination, and the court remarked: "Call another witness. I doubt if she understands the import of all of it."

A number of witnesses testified that Washington and Effie lived together as husband and wife, and that it was generally understood among the Indians that

Elmer S. Rutherford and A. S. Wells, for plaintiff in error.

Norvell & Norvell, for defendants in error.

HURST, J. The plaintiffs, Mary Taylor and Willie Taylor, claiming to be the sole and only heirs at law of their father, Washington Taylor, deceased, a full-blood Seminole allottee, filed this action to quiet title to the allotment of their father. They made as party defendant, Effie Cordilla, nee Miles, a full-blood Tonkawa Indian, who filed an answer alleging that she was the wife of Washington Taylor at the time of his death and was entitled to an interest in the land herein involved. The plaintiffs filed a reply denying the affirmative allegations of defendant's answer and pleading the statute of limitations.

The records show that on November 30, 1914, Molleah Taylor obtained a divorce from Washington Taylor in Seminole county. At that time they had two children, Mary Taylor, one of the plaintiffs herein, and Joe Taylor. Thereafter the plaintiff Willie Taylor was born. Joe died intestate and without issue a short time after the death of his father, being at the time of his death a minor. Soon after Molleah was granted a divorce, Washington went to Kay county and lived about a year among the Tonkawa Indians. During the spring or summer of 1916 he returned to Seminole county, where he resided until the time of his death, October 17, 1916. He died intestate, and no question is raised as to the plaintiffs being his only surviving children.

The evidence is voluminous, covering some 860 pages of the record. More than

they were married; while a number of witnesses, with an equal opportunity to know the facts, testified that they never knew of them living together and that they never heard of them being married. There was testimony that Washington told others that Effie was his wife. Some witnesses testified that they went to the home of Effie's father and saw Washington there, and that her father told them that Washington was Effie's husband. The evidence indicates that they could not converse with each other, being members of different tribes. Effie did not testify where she and Washington were married, but did testify about the feast given by Depee, and testified that she could not understand what Depee said at the feast, as he talked in the Iowa Indian language. Effie testified that when Washington left to return to the Seminoles he was "not mad," and that thereafter she heard he was dead. There is no evidence to indicate that, during the period of more than 18 years, from 1916, when Washington left her, until 1934, when this suit was commenced and she filed her answer, Effie made any claim to an interest in Washington's estate. The plaintiffs introduced in evidence the records of the district court of Kay county showing that on February 22, 1916, Effie filed suit for divorce from Antoine Roubideaux and alleged that she and Roubideaux were married at Newkirk, Okla., on January 21, 1913, and had ever since been husband and wife, and on April 24, 1916, a decree was entered awarding her a divorce in said cause.

The defendant introduced evidence tending to show that Antoine Roubideaux had a common-law wife, Lula Plumlee, at the time he married the defendant, and therefore the marriage between defendant and Antoine Roubideaux was illegal and void. The plaintiffs then introduced evidence tending to show that Roubideaux could not have been the husband of Lula Plumlee, since she had a living husband by the name of Fred Big Soldier, and the proof showed that she lived with Big Soldier and had a child by him. There was a sharp conflict in the evidence as to these two purported common-law marriages between Lula Plumlee and Roubideaux, and between Lula Plumlee and Fred Big Soldier.

The record shows that the defendant had been married to two men before she claims she married Washington, and that after she obtained the divorce from Roubideaux she married again. All of these marriages were by license and complied with the statute regulating marriage.

The court, at the close of the evidence, dictated into the record informal findings, and thereafter made formal findings of fact and conclusions of law, as follows:

"The court finds that Washington Taylor was allotted the lands subscribed (sic) in the petition in section 10, township 8 north, range 6 east in Seminole county, Oklahoma. That Washington Taylor died intestate on October 17, 1916. That he left surviving three children, Joe Taylor, Mary Taylor, and Willie Taylor. The court finds that he left no wife surviving but died a single man. The court further finds that Joe Taylor, one of the children above mentioned, died in April, 1918, while a minor and without having ever been married or having issue and left as his sole and surviving heirs the plaintiffs herein, Mary and Willie Taylor, and that upon his death Mary and Willie Taylor inherited the lands of their father, Washington Taylor, and that the two plaintiffs, Mary and Willie Taylor, are in possession and have been in possession of the lands involved and are the sole owners thereof.

"This case involves the question of common-law marriage. The plaintiffs allege that after Washington Taylor had divorced his Seminole wife and mother of the above-named children that he remarried her by the common-law. The court finds that he did not. The defendant and cross-petitioner, Effie Cordilla, introduced proof to show that she was the common-law wife of Washington Taylor, and a great deal of evidence has been introduced in this matter pro and con, but the court finds after due deliberation that there was no common-law marriage between Washington Taylor and Effie Cordilla, the defendant and cross-petitioner herein.

"Conclusions of Law.

"The court concludes as a matter of law that the plaintiffs herein are the sole owners of the land described in their petition and they should have the same quieted in them as against the claims of the defendants and particularly as to Effie Cordilla, as alleged in their petition, including the unknown heirs, etc., as alleged in the petition.

"January 18th, 1936."

From the judgment in favor of plaintiffs, the defendant has appealed.

1. For reversal of said judgment, the defendant first argues that the findings of fact and judgment of the court are against the clear weight of the evidence.

This being an equity case, we cannot reverse the trial court unless we find that the judgment is against the clear weight of the evidence. Hivick v. Turben (1920) 77 Okla. 230, 187 P. 1094; City of Muskogee v. Burford (1919) 77 Okla. 174, 186 P. 949. The burden was upon the defendant to establish the facts necessary to constitute a common-law marriage between Washington and herself, namely, (1) that they were both legally capable of entering into the marriage relation with each other, and that neither had a living undivorced spouse; and (2) that they agreed "to be husband and wife, not in the future, but in the present" (Mudd v. Perry, 108 Okla. 168, 235 P. 479), and pursuant to such agreement that they entered into and maintained the marriage relation. In re Love's Estate, 42 Okla. 478, 142 P. 305, L. R. A. 1915E, 109.

This case was tried about 20 years after it is claimed Washington and Effie were married; many of the witnesses were full-blood Indians who had to testify through an interpreter. In the very nature of the case it is difficult for the court to determine just what are the facts. The trial judge saw the witnesses, observed their demeanor on the stand, was familiar with their intelligence and means of knowing the facts about which they testified, their interests or bias, and was in a much better position to determine the weight to be given to the testimony of the various witnesses than is this court by an examination of the record. The informal analysis of the testimony dictated into the record by the trial judge shows that he had the case well in mind. The findings, under such circumstances, are entitled to great weight. Moorman v. Pettit (1926) 119 Okla. 22, 248 P. 838. We have carefully read the record and briefs and are convinced that the judgment of the trial court is in accordance with, and is not against the clear weight of the evidence.

2. The defendant also contends that the finding of facts by the trial judge is not sufficient to satisfy the requirements of section 374. O. S. 1931. At the time her brief containing this contention was printed, the formal findings of fact and conclusions of law were not a part of the record, having been inadvertently omitted, but afterwards the case-made was amended so as to contain the same. We think the formal findings of fact and conclusions of law sufficiently comply with the statute.

Judgment affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH and CORN, JJ., concur.