IMPSON v. KELLEY et al.

No. 31451. Oct. 17, 1944.

Rehearing Denied June 19, 1945.

Application for Leave to File Second Petition for Rehearing Denied Sept. 18, 1945.

163 P. 2d 984.

C. E. Dudley, of Antlers, and John B. Ogden, of Oklahoma City, for plaintiff in error.

J. B. Moore, of Ardmore, for defendants in error.

RILEY, J. Dennis Impson, Choctaw Indian Allottee, Roll No. 5225, died intestate on or about December 24, 1940, seized of his allotted land in Carter county, consisting of 120 acres.

On March 21, 1941, Dickey Impson, claiming ownership, commenced this action to quiet title to the land. Plaintiff claimed title from his deceased maternal grandfather, Dennis Impson, and alleged that Jane Kelley, formerly Jane Impson, and other unknown claimants were claiming some right, title, and interest in the land adversely, but, in fact, no such right, title, or interest existed. Plaintiff pleaded himself to be the sole heir at law of said Dennis Impson; that he is the son of Elizabeth Impson, who predeceased her father, Dennis Impson, deceased, and was his only child.

Jennie Impson, referred to in plaintiff's petition as Jane Kelley, answered, claiming title as the surviving wife of Dennis Impson. The trial court held against her. She does not appeal. Joshua Impson answered, denying that plaintiff is the lawful heir of Dennis Impson. He alleges himself to be a brother and heir at law of said Dennis Impson. Susie Burris Williams, nee Impson, answered, denying that plaintiff is the lawful heir of Dennis Impson. She alleged herself to be the half-sister and sole heir of said Dennis Impson.

The evidence shows defendants in error are the sole heirs at law of Dennis Impson, deceased, unless the claim of plaintiff is sustained.

The trial court found that plaintiff, Dickey Impson, is the son of Elizabeth Impson, but that he was born out of wedlock; that he is illegitimate, and so not entitled to inherit from Dennis Impson. Defendants in error prevailed.

Although Elizabeth Impson, now deceased, was the daughter and only child of Dennis Impson, if plaintiff is the illegitimate child of Elizabeth Impson, he is not entitled to inherit from Dennis Impson. Bahnsen v. Burl, 95 Okla. 191, 218 P. 846.

The trial in the district court was a statutory proceeding. The judgment rendered is reviewable in the same manner as a decree in an action of equitable cognizance. In re Milton's Estate, 182 Okla. 625, 79 P. 2d 612. The judgment or decree of the trial court should not be reversed unless it is clearly against the weight of the evidence. Cordilla v. Taylor, 181 Okla. 20, 72 P.

2d 375; In re Trope's Estate, 190 Okla. 453, 124 P. 2d 733.

Plaintiff relies upon a sensual or so-called common-law marriage between his mother, Elizabeth Impson, and John Billy, alleged to have occurred in 1904. According to the Choctaw Indian Roll, Elizabeth Impson was a full-blood Choctaw Indian, enrolled May 16, 1899. At that time she was nine years old, and her mother, Willissy Impson, was dead. John Billy was enrolled May 22, 1899, and was at that time ten years of age. Therefore, in 1904, Elizabeth Impson was 14 years of age and John Billy was 15.

Where the right of a party to the relief sought is dependent upon the existence of a so-called common-law marriage, the burden is upon such party to establish the facts essential to constitute such marriage. In re Trope's Estate, supra.

John Billy was a witness for plaintiff and testified that he knew Dickey Impson; that Dickey Impson is his son; that Dickey's mother was Elizabeth Impson; and that Elizabeth Impson was his (John Billy's) wife. As to how and when he was married to Elizabeth Impson, he testified:

"A. We had agreed to live together in 1904 and we lived together up until 1907. Q. You say you agreed to live together as man and wife? By Mr. Moore, of Counsel for Defendant, Susie Williams: We object to that as being leading. By the Court: It is leading and suggestive but let him answer and testify. Q. (By Mr. Dudley) What was it you did say? A. We agreed to live together in 1904 and lived together until 1909, he was born in 1906. Q. In what way did you agree to live together. A. As man and wife. Q. Where did this occur? A. About a mile and a half north of Fisher's old stand, they call it Daisy now."

He testified further that he and Elizabeth separated about November or December, 1909, and that Elizabeth died about 1909, and that he married again in January, 1910, by ceremonial marriage; that he lived with Elizabeth at the home of his grandmother, Susie Berry; that after separation from Elizabeth, Elizabeth lived with her uncle, Culbertson Hudson; that after separation, he never saw, for two or three years, the child, Dickey Impson. When he was asked whether he had contributed to the support of the child, he said: "My folks took it over to them." John Billy testified that after Elizabeth's death, Dickey lived with his uncle, Culbertson Hudson, and never did live with him.

Frances Hampton, a witness for plaintiff, testified that at one time she lived near Daisy; that she had known Dickey Impson all his life; that Elizabeth Impson was his mother and John Billy was his father; that she knew that John Billy and Elizabeth Impson lived together and that John Billy always said that Elizabeth was his wife and that she had seen them together at church and Indian meetings; that the child has been known all his life as Dickey Impson.

There is other evidence tending to prove that John Billy and Elizabeth Impson lived together, but there is little evidence tending to show that they were generally reputed in the community and among their friends and relatives to be husband and wife.

There are so many contradictions in the testimony of John Billy and so many other facts shown by record evidence contradicting his story as to make it improbable. The trial judge stated: "I don't put any credence in that testimony that John Billy lived with that girl any, I don't think there is any credence to be put in that." John Billy first testified that he and Elizabeth had agreed to live together as man and wife in 1904 and that they lived together until 1907. He then stated that they agreed to live together in 1904 and lived together until 1909 and that Dickey Impson was born in 1906. He testified that Elizabeth died along about 1909 and that he remarried by ceremonial marriage January 5, 1910. He then testified that he and Elizabeth separated in November or December,

1909. Again he testified that they lived together from 1904 to 1907, and that Dickey was about one year old when they separated. He testified, at one time, that he was about 17 years old when he and Elizabeth were married, and that Elizabeth was 16. Later he testified that he was 16 years old at the time he and Elizabeth were married. The Choctaw Roll shows that John Billy was born in 1889, which would make him 15 years old in 1904. The Roll shows that Elizabeth was born in 1890, showing that she was 14 years old in 1904. Record proof in the proceedings to determine heirship in the estate of Elizabeth Impson shows that she died in 1912 and was then 22 years of age. If John Billy and Elizabeth were husband and wife in 1907, or in 1909 when he says they separated, and she did not die until 1912, then he had a living wife when he married again January 5, 1910.

The record evidence in the proof of heirship in the estate of Elizabeth Impson shows that she had been married to Felix Noatabbe and that he died prior to the death of Elizabeth. This same record shows that Dickey Impson was born in 1908 and was the only child and sole heir of Elizabeth. In that proceeding, John Billy appears to have made no claim that he was Elizabeth's surviving husband or that he was entitled to share in her estate. These are all matters of record, long before any question arose as to who were the heirs of Dennis Impson. They tend strongly to refute the existence of a common-law marriage between John Billy and Elizabeth Impson. There are other facts tending to refute such claim. There is evidence that Dickey Impson was born at the home of Culbertson Hudson, Elizabeth's uncle. After Elizabeth's death, Culbertson Hudson was appointed legal guardian of Dickey, and after Culbertson's death in 1906, May Hudson, Culbertson's widow, was appointed as Dickey's legal guardian. There is no evidence that John Billy ever contributed to the support of the child Dickey or took any interest in him until the question of heirship of

Dennis Impson arose. In Cordilla v. Taylor, 181 Okla. 20, 72 P. 2d 375, it is said:

"This case was tried about 20 years after it is claimed Washington and Effie were married; many of the witnesses were full-blood Indians who had to testify through an interpreter. In the very nature of the case it is difficult for the court to determine just what are the facts. The trial judge saw the witnesses, observed their demeanor on the stand, was familiar with their intelligence and means of knowing the facts about which they testified, their interests or bias, and was in a much better position to determine the weight to be given to the testimony of the various witnesses than is this court by an examination of the record."

From the record as a whole, we cannot say that the finding and judgment of the trial court are against the clear weight of the evidence.

Plaintiff contends that the court erred in admitting the testimony of Luster Cook, United States Probate Attorney, to the effect that sometime before this action was commenced plaintiff, Dickey Impson, came to his office and discussed with him the question of his legitimacy or illegitimacy, and that in said conversation Dickey Impson told him that he, Dickey, was the illegitimate son of Elizabeth Impson. Plaintiff objected to the competency of the witness on the ground that Cook is, by law, the attorney for plaintiff and is, by law, attorney for all full-blood Indians, and therefore the statements of plaintiff to Cook were privileged communications. The witness testified that he was not acting in the capacity of attorney for any full-blood Indian in this case; that the relation of attorney and client did not exist; that he filed no pleadings in the case and did not represent Dickey Impson as attorney and that he had talked to all the Indians in this lawsuit. The trial court ruled that Cook was acting as a government official rather than attorney for plaintiff. Under the record, there was no reversible error in admitting the testimony for the reason

that, aside from the testimony of the witness Cook, the record amply supports the decree rendered.

Plaintiff further asserts error in the rejection of the proffered testimony of Victor Locke, Jr., concerning an investigation which he had made in the vicinity of Daisy, about 1932, some 24 years after plaintiff, Dickey Impson, was born, and that persons, some of whom were relatives of John Billy, told the witness that Dickey Impson was the son of John Billy and that John Billy and Elizabeth were living together at the time the child was born. The court rejected the proffered testimony as being hearsay and too remote. It would have been hearsay concerning specific facts and, if admissible as hearsay, it would have been too remote to be of any probative value.

There was no error in rejecting the testimony.

Affirmed.

CORN, C.J., GIBSON, V.C.J., and OSBORN and HURST, JJ., concur. BAYLESS, WELCH, DAVISON, and ARNOLD, JJ., dissent.