[Civ. No. 102.   First Appellate District.—December 12, 1905.]

MARY E. DANIELS, Appellant, v. WALTER E. DEAN et
al., Respondents.

ACTION TO RECOVER HOMESTEAD—IGNORANCE OF RIGHTS—CANCELLATION
OF INSTRUMENTS—REAL ACTION—STATUTE OF LIMITATIONS.—An
action by a widow to recover a homestead declared by her deceased
husband as the alleged owner thereof, and to cancel an abandon-
ment thereof alleged to have been made in ignorance of her rights
until the month when suit was brought, under a stipulation by all
parties interested in his estate in consideration of $5,000 paid to
her to secure such abandonment, and also to cancel a deed made
under an order of sale of the property, sixteen years before suit
brought, as well as subsequently recorded deeds to successors of the
grantee, is in effect an action to recover real property, and is barred
by the provisions of section 318 of the Code of Civil Procedure.

ID.—MISTAKE OF LAW—GROUND OF EQUITABLE RELIEF NOT SHOWN.—
Where the complaint of the plaintiff seeks relief on the ground of
ignorance of her legal rights, the gist of the whole case being that
she did not know the law that the homestead declared by her hus-
band vested in her by his death, and does not show that the $5,000
paid to her was not the value of the homestead or a good compromise
thereof, and does not offer to restore it, and alleges no fraud or
other inequitable conduct, and states no facts taking the case out of
the general rule that courts will not grant relief on the simple
ground of mistake of law, it shows no ground for equitable relief.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Alfred Fuhrman, and John Heenan, for Appellant.

Page, McCutchen, Harding & Knight, W. J. Gleason, and
Carl W. Mueller, for Respondents.

COOPER, J.—The court sustained a demurrer to the com-
plaint, and judgment was entered for defendants. This ap-
peal is from the judgment for the purpose of reviewing the
ruling on the demurrer.

The complaint states in substance as follows: That plain-
tiff and John Lowth intermarried in February, 1871, and
were husband and wife until July, 1883, when John Lowth
died. That at the time of the said marriage John Lowth was
the owner of the premises described in the complaint, and in
April, 1880, while the plaintiff and said John Lowth re-
sided upon the said premises, the said John Lowth made and
acknowledged a declaration of homestead thereon, which con-
tained the statement that: "I, John Lowth, . . . do hereby
certify and declare that I am married, and that I do now at
the time of making this declaration reside with my family on
the lot of land and premises" (describing the same). The
declaration of homestead was acknowledged and recorded.
The plaintiff and said John Lowth continued to reside upon
said premises up to the time of his death, and no declaration
of abandonment of said homestead was ever made or recorded.
John Lowth left a will, which was duly admitted to probate, and
executors thereof appointed and qualified. In October, 1885,

the said executors, having power under the will to sell real estate, were negotiating with one Costa for the sale to him of certain real estate belonging to the estate of said John Lowth, deceased, which included the premises described in said declaration of homestead. Plaintiff was consulted in regard to said contemplated sale, was represented by McAllister & Bergin, her attorneys, and was by them advised in good faith, and upon such advice she believed, that the real estate described herein was the property of the estate of said John Lowth, deceased. Plaintiff was further advised by her said attorneys, and believed, that she had a right to have a homestead set apart to her out of the estate of said deceased, and accordingly filed her application therefor in September, 1885. In ignorance of her rights, and in ignorance of the fact that the said homestead premises vested in her absolutely upon the death of said John Lowth, and in consideration of the sum of $7,500, she entered into the following stipulation, to wit:

"In the Matter of the Estate of John Lowth, Deceased.

"It is hereby stipulated by the undersigned as follows: That the family allowance payable to Mary E. Lowth, surviving wife of said deceased, under order of said court, be discontinued, and that said Mary E. Lowth relinquish all claim to any further allowance. That from the proceeds of the sale of real estate, or with funds that may come into the hands of the executors of the will of said deceased, the executors pay to said Mary E. Lowth the sum of five thousand dollars in lieu of homestead. That on payment of said sum of $5,000.00 said Mary E. Lowth, *ipso facto,* relinquishes absolutely and forever, all right to homestead in said estate, whether under alleged declaration of homestead filed for record by said John Lowth in his lifetime and recorded in the county recorder's office of said city and county, and affecting part of property of said estate, situated on the northeast corner of Tyler and Jones street, in said city and county of San Francisco, or under the provisions of the Code of Civil Procedure of the state of California applicable to cases where no homestead has been selected, designated and recorded prior to death. That the petition of said Mary E. Lowth for order setting apart homestead filed herein on the 21st day of September, 1885, be dismissed. That in addition to said sum of $5,000.00 said executors pay to said Mary E. Lowth from the proceeds of the

sale of real estate of said estate the further sum of $2,500.00 in full satisfaction and payment of family allowance, due and unpaid under orders of court heretofore made herein. That upon payment of the aggregate sum of $7,500.00 said Mary E. Lowth relinquish all right, title, claim and demand in, to or against said estate or to the income therefrom, and release and discharge the executors of the will of said deceased from all liability to her under said will. That said $7,500.00 to be accepted by her in full discharge of said homestead claim, family allowance, bequests and all other claims and demands in her favor under said will. . . . Dated October 15, 1885.

''This agreement is executed subject to the condition that all parties in interest consent to this agreement and also consent that the $7,500.00 mentioned herein shall be a preferred claim against said estate, and shall be preferred to all other claims. October 15, 1885. Witness: That is all other claims except the mortgages. Mary E. Lowth. Hall McAllister. Bidelia Kennedy. Timothy S. Brew, Executor and Creditor. Thos. Breen, Executor and Creditor. William Wynne, Assignee of William Halpin, Legatee under the Will of John Lowth, Deceased. Charles Castle, Creditor. Halpin Bros., Creditor. Catherine Roche, by her Attorney in Fact, A. H. Loughborough. Teresa McGee, by her Attorney in Fact, A. H. Loughborough. James Croke. M. C. Hassett, Attorney for Absent Heirs.''

Plaintiff, in pursuance of the said stipulation, duly made out and acknowledged an abandonment of said homestead, and of her right to have a homestead set apart to her by the probate court, which abandonment was duly recorded. That but for her ignorance, misapprehension, and the advice of her said attorneys she would not have made said agreement, entered into said stipulation, and abandoned the said homestead. That thereafter the said homestead was appraised as part of the estate of said John Lowth, deceased, and was sold with other property by the executor to said Costa in January, 1886, and a deed was duly made and delivered to said Costa and recorded. That in January, 1886, the said Costa executed a deed of conveyance to one Masten, who, in January, 1886, conveyed to one Hopkins, who afterward, in April, 1889, conveyed through her attorneys in fact to defendant Dean. Each of said conveyances was duly acknowledged and recorded. That in

October, 1888, plaintiff intermarried with one William T. Daniels, who died in December, 1897. That in February, 1902, the plaintiff first discovered that said homestead was her property and vested in her absolutely by the death of her husband. The prayer of the complaint is that the stipulation, the order dismissing the plaintiff's petition for a homestead, the abandonment of the homestead, and each deed in the chain of title up to and including the deed to defendant Dean be canceled, annulled, and declared void *ab initio*, "that it be decreed that plaintiff is the owner of the said land, premises, and homestead, and that defendants, and all persons claiming or to claim under them be forever enjoined from asserting or claiming any right, title, interest or estate in, to, or of said land, premises, and homestead of plaintiff, or any part thereof," that an accounting may be had of the rents, issues, and profits, and that plaintiff may have judgment therefor, and for such other relief as may be proper in the premises. The complaint was filed in February, 1902, nearly nineteen years after the death of John Lowth, and more than sixteen years after plaintiff had signed the stipulation and abandoned her claim to the homestead in consideration of $5,000. No offer is made in the complaint to restore the $5,000 which was paid to plaintiff.

We are of the opinion that the court properly sustained the demurrer to the complaint. One of the grounds of demurrer is that it appears upon the face of the complaint that it is barred by the provisions of section 318 of the Code of Civil Procedure, which provides that no action for the recovery of real property, or for the recovery of the possession thereof, can be maintained unless it appear that plaintiff, his ancestor, predecessor, or grantor was seised and possessed of the property within five years before the commencement of the action. We think the action is one in effect to recover real property. It is a part of the prayer of the complaint that plaintiff be adjudged to be the owner of the homestead, that all deeds and papers tending to show title in others be set aside and declared void, and that plaintiff's title be quieted against all persons. In *Goodnow* v. *Parker*, 112 Cal. 437, [44 Pac. 738], it was sought by the action to compel a conveyance and to quiet title. The action was held to be in effect an action to recover real property. The court said: "If the plaintiff had had the

legal title to the disputed portion, having been ousted from its possession, he could have recovered the possession in ejectment; but without the legal title his only remedy was in equity, not only to obtain possession, but to recover the property, and these were the objects and purposes of the suit, and that section of the code which relates to actions for these purposes is the one to which we must look.'' The question is fully discussed in *Murphy* v. *Crowley*, 140 Cal. 145, [73 Pac. 821], where it is said: ''Under our system of pleading there is no distinction in the forms of civil action, but it has been held that the distinction between the causes of action still remains for some purposes. Legal and equitable remedies may be sought in the same case where they relate to the same subject matter. The nature of a cause of action is to be determined more from the object and purposes of the suit than from the character of the evidence which is necessary to maintain it. . . . If the plaintiff alleges facts which show, as matter of law, that he is entitled to possession of the property, and a part of the relief asked is that he be let into possession, or that his title to the land be quieted, the action is in reality for the recovery of real property, and is not barred except by the five year limitation contained in section 318.'' The above case was followed and approved in *South Tule etc. Co.* v. *King*, 144 Cal. 450, [77 Pac. 1032]. If this action had been in ejectment, there is no question but that it would be barred by the statute. If the court should find for plaintiff that she is the owner of the land, and that all the defendants be forever barred from claiming or asserting any title to it, she could then bring an action in ejectment, and defendant would have no defense. She would thus be allowed to recover through the machinery of two actions that which she could not have been allowed to recover if she had sought all the relief in the one action. Surely the law does not contemplate such result. This action is in effect to settle and determine the question as to whether or not the plaintiff is the owner of the homestead, and is thus for the recovery of real estate, and barred by the statute.

We are further of the opinion that the complaint asks relief for a mere mistake of law without showing any facts which will take it out of the general rule that courts will not grant relief on the simple ground of mistake of law. The plaintiff

had not been advised of her right to a probate homestead. She had able attorneys.   She knew of the "alleged declaration. of homestead filed for record by Lowth in his lifetime." She does not allege nor show that $5,000 was not the full value of the alleged homestead.   There is not an element of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or other inequitable conduct alleged in the complaint.   The gist of the whole case is that she did not know the law, that the homestead vested in her by the death of her husband.   It is one of the fundamental maxims of the common law that ignorance of the law excuses no one.   If ignorance of the law could in all cases be the foundation of a suit in equity for relief, there would be no end of litigation, and the administration of justice would become in effect impracticable.   There would be but few cases in which one party or the other would not allege it as a ground for exemption from legal liability, and the extent of the legal knowledge of each individual suitor would be the material fact on which judgment would be founded.   Instead of trying the facts, the time of the court would be occupied in determining whether or not the parties knew the law at the time the contract was made or the transaction entered into.   The administration of justice in the courts is a practical system for the regulation of the transactions of life in the business world.   It assumes, and must assume, that all persons of sound and mature mind know the law, otherwise there would be no security in legal rights and no certainty in judicial investigations.

One of the most instructive cases on the question is *Stewart* v. *Stewart*, 6 Clarke & F. 911, where the opinion was delivered by Lord Chancellor Cottenham, and the English cases fully reviewed.   It was held that a widow, who had entered into a compromise agreement by the advice of her law agent, and received her share of the estate under the agreement, could not be relieved of the agreement upon the ground that she was ignorant of her legal rights.   It is there said: "The question is whether a compromise and arrangement fairly and honestly entered into, in which the party now complaining acted under the advice of a professional man, who called to his assistance two of the most distinguished counsel of the Scotch bar, is to be set aside because a point was overlooked in that party's case which, if thought of at the time, might have prevented

her from agreeing to the terms proposed, as it might have made a very material difference in the relative situation of the parties. . . . All the facts raising the point of law were fully known to all the parties, and the point of law mistaken, or not attended to, was that the pursuer was entitled to repudiate the provisions made for her by her deceased husband, and to claim the *jus relictae*; whereas the negotiation of the compromise proceeded upon the supposition that, if the law of Scotland was to prevail, she could only claim the benefit of those provisions." In *Gwynn and Wife* v. *Hamilton's Admr.*, 29 Ala. 233, where the husband, under the erroneous supposition that his marital rights had not attached to certain slaves belonging to his wife, delivered them to the distributees of her estate, the court held that it was a mistake of law, and that equity would grant no relief. In *Weed* v. *Weed*, 94 N. Y. 243, it was held that, where a person, with full knowledge of all the facts, but through a mistaken belief that his interest in real estate was not subject to sale on execution, has lost his title through a regular sale on judgment and execution, and a conveyance by the sheriff to the purchaser pursuant to the sale after the time for redemption has expired, the court had no power to permit a redemption, as it was a mere mistake as to legal rights. In *Williams* v. *Thwing Electric Co.*, 160 Ill. 526, [43 N. E. 595], it was held that a subscription to the capital stock of a corporation cannot be canceled, because the subscriber, through ignorance of law, acted under the mistaken idea that she was purchasing stock of a corporation already organized, instead of participating in the organization of a new corporation. In *Meckley's Estate*, 20 Pa. St. 478, it was held that parol evidence was not admissible to show that the parties interested did not understand the will to mean what it had been constituted to mean, but that its meaning was that dower was to constitute a part of the purchase money of the farm and not an addition to it, as the matter in dispute was not a matter of fact, but a question of law. The question was considered at an early day by the supreme court of the United States in *Hunt* v. *Rousmaniere's Admrs.*, 1 Pet. 15, and it was there said: "We hold the general rule to be that a mistake of this character [ignorance of law] is not ground for reforming a deed founded on such mistake; and, whatever exceptions there may be to this rule, they are not only few in

number, but they will be found to have something peculiar in their characters.'' In *Cooley* v. *County of Calaveras,* 121 Cal. 486, [53 Pac. 1077], it is said: "The understanding of the law prevailing at the time of the settlement of a contract, although erroneous, will govern, and the subsequent settlement of a question of law by judicial decision does not create such a mistake of law as courts will rectify.''

It may be that the attorneys for plaintiff fully advised her in regard to an alleged defect in the homestead declaration made by John Lowth, and that it was with this in mind that the stipulation was made. The declaration was referred to in the stipulation as an "alleged declaration of homestead.'' It is seriously urged by respondent that the declaration of homestead is void, because it does not show that John Lowth was the head of a family; and, unless we were to take judicial notice that John is and was the name of the husband, there would seem to be much force in this contention (*Reid* v. *Englehart Davidson Co.,* 126 Cal. 427, [77 Am. St. Rep. 206, 58 Pac. 1063] ; and it would seem that we cannot determine the sex from the name alone. (*People* v. *Carroll,* 1 Cal. App. 2, [81 Pac. 680].) However, we do not deem it necessary to decide the question as to the validity of the homestead declaration, and what we have said is only for the purpose of showing that it is probable that plaintiff secured a good compromise of her homestead claim.

The judgment is affirmed.

Harrison, P. J., and Hall, J., concurred.