### POTTER et al. v. ERTEL.

No. 9647.—Opinion Filed Aug. 31, 1920.

Rehearing Denied Dec. 28, 1920.

(Syllabus by the Court.)

1. **Appeal and Error—Review of Equity Case—Conclusiveness of Findings.**

(a) In an equitable action, the findings of the trial court should be sustained unless it appears that his findings are clearly against the weight of the evidence.

(b) The findings of the trial court should be strongly persuasive, and should not be set aside unless this court can say, in equity and good conscience, that the conclusion reached by the trial court is clearly against the weight of the evidence.

2. **Contracts—Consideration—What Constitutes.**

An agreement whereby one party puts his services, knowledge, skill, labor, or learning against the money or property of the other is a sufficient consideration to support a contract.

3. **Partnership — Contracts — Authority of Partner to Bind Firm.**

In a partnership, each partner is empowered to bind the firm by contracts which are reasonably necessary to carry on the business of the partnership in the ordinary manner.

4. **Same — Joint Adventures—Judgment — Evidence.**

Record examined and held that the judgment of the trial court is not clearly against the weight of the evidence.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by Edward E. Ertel against J. W. Potter and others for interest in oil and gas lease. Judgment for plaintiff, and defendants bring error. Affirmed.

H. A. Ledbetter, for plaintiffs in error.

Charles A. Coakley, James H. Mathers, and W. B. Johnson, for defendant in error.

PITCHFORD, J. For convenience, the parties herein will be referred to as they appeared in the trial court.

Plaintiff, Edward E. Ertel, filed his petition in the district court of Carter county against J. W. Potter and Morris Sass, claiming that on or about the 10th day of July, 1916, in consideration of the personal services rendered by him, he entered into an oral agreement with the defendants whereby each was to share equally in a certain oil and gas lease, covering certain lands located in section 24, township 4 south, range 3 west. The answer denied that the plaintiff had any interest in the lease. The cause was tried in the court below, and resulted in judgment for plaintiff, from which judgment defendants appeal.

The evidence discloses that sometime prior to the date of the lease, the plaintiff had been working in the office of the defendants, not having any definite understanding as to his relations with the firm. One of the witnesses designated him as a "roustabout." It appears that he was a rustler, from the evidence of the defendant Potter.

Sometime between the 8th and 10th of July, 1916, plaintiff was returning from Healdton; driving along the road he overtook an old man and asked him to get into his car and ride. The name of this party was Watson. The plaintiff, having oil leases constantly on his mind, inquired of the old man if he had any oil land not leased. Mr. Watson answered that he had none himself, but that his son did. He was not able to give the plaintiff a description of his son's land, but stated that the same was in section 24, township 4 south, range 3 west. As soon as the plaintiff returned to Ardmore he examined the records and ascertained that the son, James Watson, owned 40 acres of land in the above section, clear of leases. After securing this information, he informed the defendant Potter of his discovery. Mr. Potter at once became interested and he and the plaintiff went out to the home of James Watson for the purpose of securing an oil and gas lease upon the 40 acres. On the way out, in discussing the lease, Potter informed the plaintiff that if they could secure the lease, they would have to get some one to finance the same in the way of paying the bonus, but that the plaintiff should have a one-third interest in whatever interest was taken by the defendants, Potter and Sass. When they reached the home of Watson, they found him absent. They returned to Ardmore. Immediately thereafter Potter and Sass went out to the home of James Watson and secured the lease from him for a bonus of $2,000. Arrangements were made with one Wallace to advance the $2,000 to secure which he was assigned a one-half interest in the lease. The plaintiff accompanied the defendant Potter to the courthouse when the lease was recorded. On

their return, the defendant Potter informed the plaintiff that as he had found the lease, and the circumstances of it, he would be a third partner in the interest of Potter and Sass.

It was afterwards discovered that there was another lease outstanding on the 40 acres in favor of one Babcock. The defendant and Babcock compromised their differences by Babcock retaining a one-half interest in the lease. Thereafter Potter and Sass sold to J. B. Googins, for a consideration of $1,500, a one-fourth interest. This amount was paid to Mr. Wallace, which left $500 still due him. It was then agreed between Wallace and the defendants that Wallace was to have a one-eighth interest in the lease for $250, leaving still due Wallace from the defendants $250. Plaintiff claimed that he, Potter, and Sass were the owners equally of an undivided one-eighth interest in the lease.

Afterwards Potter and Sass organized a domestic corporation known as The 1917 Oil Company, and owned practically all of the stock, and assigned their interest in the lease to the corporation. The interest of Wallace and Googins was also assigned. The corporation was organized for $10,000, the result being that Googins was entitled to $5,000 worth of the stock. Wallace was entitled to $2,500 worth of the stock, and Potter, Sass and the plaintiff to $2,500. The judgment of the trial court was that the defendants, J. W. Potter and Morris Sass, should assign and deliver to the plaintiff certificates of stock for $833.33 1-3, face value of the capital stock of The 1917 Oil Company; that The 1917 Oil Company and its officers were ordered to immediately assign and transfer on the books of said company to the plaintiff $833.33 1-3 face value, of the capital stock; that the plaintiff was due the defendants, Potter and Sass, one-third of $500, to wit, $166.66 2-3, and that the plaintiff make good his tender of said amount by depositing the same in the hands of the court clerk of Carter county.

The court was evidently more strongly impressed with the evidence on the part of the plaintiff than he was with that on the part of the defendants. It is true the contention of the plaintiff was denied by the defendants, and the testimony of the defendants positively disputed the plaintiff's claims. The plaintiff, however, was corroborated by the witness J. B. Watson, who stated that Ertel came along and picked him up; that they began talking about oil leases, and the witness referred plaintiff to his son, and told plaintiff what land his son had, the number of acres, and its location; and, further, that a short time thereafter, the plaintiff came to his house with the defendant Potter; that they came

to his house for the purpose of finding his son, in order to get a lease on his land. Plaintiff was also corroborated by the evidence of James Watson, the lessor, who testified that during the month of July he received information from his father about some men being at his father's house and wanting to lease the land in question, and that Potter and Sass later came to his house and procured the lease. The evidence further discloses that the plaintiff was working for Potter and Sass without any definite agreement as to his compensation. It seems that he was paid according to the circumstances of the particular deal.

When the plaintiff located this lease, secured the data on it, and went to the defendant Potter with this information, and Potter, acting upon this information, went with Ertel to see the owner of the land, nothing is more natural than the conversation testified to by the plaintiff; that is, when Potter told him that if they succeeded in securing the lease, plaintiff was to have an interest in the same. Potter was not advancing any money on the lease, neither was Sass. All of the circumstances show that plaintiff and the defendants were simply in a speculative scheme. Ertel found the land, conveying this information to Potter, Potter interested Wallace with them, Wallace advanced the bonus, for which he was to receive his interest; so we say, under all the circumstances, it was natural that Potter and Sass should feel that Ertel should have an interest in the lease, and this interest was recognized by them.

The court clearly had a right in weighing the evidence to consider the demeanor of the witnesses and the reasonableness of their testimony. If he found that the plaintiff was working for Potter and Sass, without any definite agreement, but was to be paid according to the circumstances of the particular deal, and that the plaintiff located this lease, got the data on it, told Potter about it, that Potter and Ertel went to get it, and on the trip told Ertel they would get it financed, that on the day it was recorded Potter told Ertel he should have a third interest, then the court was justified in finding that Ertel was a partner in this lease.

This court, in the case of Heckman v. McQueen, 57 Okla. 303, 157 Pac. 139, said:

"Although in a case of purely equitable cognizance this court will review the evidence, the judgment of the trial court ought not ordinarily to be set aside unless it is clearly wrong. The evidence in the case at bar was very unsatisfactory, but after a careful review, we are not willing to say that the evidence on behalf of the defendant below was of such a clear and convincing character that

we ought to set aside the findings and judgment of the chancellor, who heard and saw the witnesses who testified."

In the case of Voris v. Robbins, 52 Okla. 671, 153 Pac. 120, the third paragraph of the syllabus is as follows:

"(a) In an equitable action, the findings of the trial court should be sustained unless it appears that his findings are clearly against the weight of the evidence.

"(b) The findings of the trial court should be strongly persuasive, and should not be set aside unless this court can say, in equity and good conscience, that the conclusion reached by the trial court is clearly against the weight of the evidence."

The propositions involved in the instant case are in many particulars similar to those in the case of Chowning v. Graham, 74 Oklahoma, 178 Pac. 676. There the plaintiff testified that he had, at a considerable expense, learned the location of the land, the name of the allottee, and where he lived and that in consideration of the expenditure thus made, and the information thus obtained, it was agreed between himself and the defendant that the latter should furnish the money necessary to buying the allotment, and they should divide the profits arising therefrom, after the defendant had deducted all expenses, together with the purchase price thereof. The defendant further contended that the information obtained by the plaintiff was a matter of public record, and was open to the defendant for his discovery as well as to the plaintiff. In delivering the opinion, among other things, the court said:

"We are unable to agree with the defendant that there was no consideration shown. It is a sufficient consideration where one party puts his services or labor or skill or learning against the money or property of the other, or that each put money into the venture. The plaintiff in this action put into the agreement the money that he had expended in an effort to locate the land, the name of the allottee, and his location, and after he had learned these things, he furnished them to the defendant."

It is further contended by the defendants that Potter was without power to take plaintiff into a partnership without the consent of his copartner, Sass. It must be borne in mind that there is no effort to take Ertel into the partnership of Potter and Sass; that is, as a partner in all of their business. This could not have been done without the consent of Sass. In that event, if Ertel were now suing for an accounting on all the business done by Potter and Sass, and claiming a one-third interest in all their business, then the authorities cited by plaintiff in error would

be applicable. It is not claimed that Ertel was a member of the partnership of Potter and Sass, but the claim is made that the lease in controversy was simply a joint venture; in other words, a partnership for this single transaction on an equal interest, however it may be denominated, wherein Potter, for the benefit of the firm, saw fit to enter into an agreement for the firm with Ertel for the purpose of sharing in the profits in the lease which Ertel had located. For this purpose Potter was authorized to act for the firm; the evidence shows that the firm of Potter and Sass was engaged in the business of taking, buying, and selling leases.

The evidence shows that Wallace was taken in as a partner for the reason that he furnished the consideration for the bonus. As a member of the firm, Potter had power to bind the firm in any transaction within the scope of their business.

In 30 Cyc. 487, the rule is laid down as follows:

"Each partner is * * * empowered to bind the firm by contracts which are reasonably necessary to carry on the business of the partnership in the ordinary manner. * * *"

Potter having received information from Ertel as to the lease, and realizing that the firm might profit by becoming interested in the lease, we are of the opinion that he had authority to bind Sass.

We have examined the record, and conclude that the judgment of the trial court is not clearly against the weight of the evidence, and are of the opinion that the same should be affirmed, and it is so ordered.

RAINEY, C. J., HARRISON, V. C. J., and KANE and JOHNSON, JJ., concur.