## JOHNSON v. JOHNSTON et al.

No. 10125—Opinion Filed May 24, 1921.

Rehearing Denied July 19, 1921.

(Syllabus.)

1. Homestead—Intent to Occupy—Evidence.

Intention is the prime element necessary for the purpose of impressing the homestead character upon land prior to actual occupancy. This intention must be manifested by such acts as to give at least reasonable notice of that intention. The purpose of the law is that such open evidence of this intention should be shown as to prevent the claim of this right as a shield for fraud. This intention should not only be in the mind of the party, but should be evidenced by some unmistakable acts showing an intention to carry out such a design.

**2. Appeal and Error—Review of Equity Case—Findings—Conclusiveness.**

In an equitable action the presumption is in favor of the finding of the trial court, and it will not be set aside unless clearly against the weight of the evidence. Where the finding of the trial court is general, such finding is a finding of each special thing necessary to sustain the general finding.

**3. Appeal and Error—Exceptions—Motion for New Trial—Failure to Make Special Findings.**

Where a request is made for special findings of fact and conclusions of law, and the court at the time judgment is rendered fails to make the special findings as requested, it is the duty of the party making the request to except to the failure of the court to make such findings, and to incorporate in the motion for new trial such failure.

**4. Judgment—Collateral Attack—Service—Recitals.**

The judgment or decree of a domestic court of general jurisdiction, reciting that the defendant was duly summoned as by law required, came not but wholly made default, is conclusive on collateral attack, and cannot be contradicted by extrinsic proof.

Error from District Court, Carter County: W. F. Freeman, Judge.

Action by Virginia Johnson against E. B. Johnston and others to cancel deed. Judgment for defendants, and plaintiff brings error. Affirmed.

Guy H. Sigler, for plaintiff in error.

Twyford & Smith and Wm. G. Davisson, for defendants in error.

PITCHFORD, J. Plaintiff in error commenced this action in the district court of Carter county, Oklahoma, against the defendants in error, seeking the cancellation of deeds to a certain 40-acre tract of land in said county; the land in controversy having been allotted to the plaintiff as a Chickasaw freedwoman. After the land had been allotted to the plaintiff, she intermarried with one Hollis Johnson. She alleges that neither she nor her husband owned any other land, and that this 40 acres constituted her homestead.

The plaintiff claims that on the 5th day of July, 1913, she was approached by the defendant Cochran, who represented to her that he desired to secure an oil and gas lease on the 40 acres; that, relying upon the representations made to her by Cochran, she signed an instrument which she thought was an oil and gas lease, but which afterwards proved to be a warranty deed. She claims that the deed is void for two reasons: First, because the land was her homestead, and, as her husband did not join with her in the execution of the deed, same was void; and second, that the deed was void because the same was procured by fraud and deceit.

It appears from the evidence that plaintiff and Hollis Johnson were married in the month of December, 1911. At the date of her marriage, she was living with her mother, and after her marriage she continued to live in the home of her mother. In the spring of 1912, her husband, Hollis Johnson, made some preparations to farm the 40 acres by doing some plowing, planting corn, and repairing the fence. After living with the plaintiff a few months, Hollis Johnson, without any apparent cause, abandoned plaintiff and never lived with her afterwards. After the abandonment, plaintiff continued to live with her mother, except for about one year when she lived at Lone Wolf, Oklahoma.

It is the contention of plaintiff that it had, at all times, been her intention to improve the land in controversy, and to occupy the same as her homestead; this intention, however, was never manifested by any overt act further than the cultivation of the land, not by herself, but by leasing the same to others. It is true that intention is the prime element necessary for the purpose of impressing the homestead character upon land prior to actual occupancy, but this intention must be manifested by such acts as to give at least reasonable notice of that intention. The purpose of the law is that such open evidence of this intention should be shown as to prevent the claim of this right as a shield for fraud. This intention should not only be in the mind of the party, but should be evidenced by some unmistakable acts, showing an intention to carry out such a design.

In McFarland' v. Coyle, 69 Oklahoma, 172 Pac. 67, being the case principally relied upon by plaintiff in support of her contention on this question, the court said:

"The rule requiring that the mere intention must be accompanied by other acts indicative of the intention, seems to be well established. Thus it will be seen from the foregoing that the intention of the homestead claimant is the prime factor in determining whether or not a certain land is impressed with the homestead character. The acts required to accompany this intention are not acts essential to the creation of a homestead, but are acts indicative of such intention. The purpose of such acts is primarily to corroborate his declaration that such intention existed in his mind."

In McCray v. Miller et al., 78 Okla. 16, 184 Pac. 781, it is said:

"Where the head of a family in this state is the owner of but one tract of land, not within any city, town, or village, consisting of not to exceed 160 acres, the fact of ownership alone does not constitute it a homestead. There can be no homestead right in land

where the owner does not and never has resided thereon, and has made no preparation or evinced any intention of so doing."

The facts in the case last quoted from are almost identical with the case at bar. In each, the husband and wife ceased to live together after a few months. The land involved was an allotment in the hands of the original allottee, and, in each, no preparations had been made to live on the land, no house or other evidences of habitation had been erected or commenced, no rock, brick, lumber, or other building material had been placed on the land looking toward the erection of a home. In the case at bar, there is nothing in the evidence showing that plaintiff had ever claimed the land as a homestead prior to the institution of this action. Besides, we find the solemn admission of the plaintiff in the deed she executed to the defendant Cochran "That this land is not now and has never been occupied as a homestead by her."

In 21 Cyc. 550, and note 99, we find the following:

"Where no such peculiar circumstances appear, a statement by a homesteader or a recital in his deed or affidavit that the premises are not a homestead will prevent homestead rights from being asserted by him."

In 13 Ruling Case Law, 662, it is said:

"Thus it has been held that a married woman free from restraint and with full knowledge of her rights, wha represents that certain land is not her homestead, thus causing an innocent person to purchase it, is concluded from setting up the homestead by her acts." To the same effect, see Daniels v. Dean et al. (Cal.) 84 Pac. 332; 21 Corp. Juris, 1088; Laurie v. Crouch, 41 Okla. 589, 139 Pac. 304.

We are of the opinion that the evidence wholly fails to establish that the homestead character had been impressed upon the land at the date of sale.

The next contention of plaintiff is that her grantee, Cochran, by fraudulently representing to her that he wanted an oil and gas lease, secured a warranty deed to her land, and that the deed was without consideration. The evidence tends to prove that the plaintiff had executed a mortgage to the Farmers' Loan & Security Company for something over $300; that this mortgage had been foreclosed and judgment rendered against the plaintiff; that the defendant Cochran had become the owner of this judgment, and that the entire matter was fully explained to the plaintiff at the time she executed the deed. There is nothing in the evidence indicating that Cochran acted in bad faith in buying the judgment. He says that he talked this

matter over with the plaintiff and informed her of the amount of the judgment, and agreed to give her, for the 40 acres, $50 in addition to the amount due on the judgment. In this he is corroborated by other witnesses. The notary public says that in taking her acknowledgment he fully explained the nature of the instrument; that he told her it was a warranty deed. The notary is corroborated by the attesting witnesses.

It is further contended by the plaintiff that the consideration was so grossly inadequate as to shock the conscience. The value of the land is shown to be between $600 and $800. The land was the property of the plaintiff. She had a perfect right to sell for $50 or $354.95, and the inadequacy of the consideration would not avail the plaintiff unless the deed was fraudulently obtained. This cause was tried to the court, and, among others, the court made the following findings:

"That a consideration of $50 cash was paid by Don A. Cochran to Virginia Johnson (nee Pettis) at the time of the execution of said deed by the said Virginia Johnson (nee Pettis) to the said Don A. Cochran; and that in addition to said sum, the said grantee assumed and paid a judgment which had been recovered prior to the date of said deed by the Farmers' Loan & Security Company, in the district court of Carter county, Oklahoma, on the 13th day of Sept., 1912, against said grantor, Virginia Johnson (nee Pettis), which said judgment, including interest, and costs amounted to $304.95; that said consideration was accepted and received by her in full payment for said land; that no mistake was made; that grantor was not misled by any acts or representations made by the grantee, or anyone in his behalf, and that no fraud whatever was perpetrated upon her by the said grantee or anyone in his behalf, but that being fully advised as to the nature of the instrument, she signed the same as her free and voluntary act and deed, and in consideration of a good and valuable consideration paid to her at the time by the said grantee."

In Weaver v. Drake et al., 79 Okla. 277, 193 Pac. 45, it is said:

"In an equitable action, the presumption is in favor of the finding of the trial court, and it will not be set aside unless clearly against the weight of the evidence. Where the finding of the trial court is general, such finding is a finding of each special thing necessary to sustain the general finding." To the same effect, see Black v. Donelson, 79 Okla. 299, 193 Pac. 424; Potter et al. v. Ertel, 80 Okla. 67, 194 Pac. 201; Olson-Hall v. Industrial Commission et al. (Colo.) 194 Pac. 212.

The plaintiff earnestly contends that the findings of fact made by the trial court should not be considered by this court, for

the reason that the findings of fact and judgment bear date of January 24, 1918, that the motion for new trial was overruled on the 2d day of February, 1918, and that the findings of fact were not filed until March 5, 1918. To sustain this contention, we are cited to a number of authorities, but, upon examination of the same, we are of the opinion they fail to sustain plaintiff's contention, for the reason that in each case cited, after the judgment had been rendered and entered, the court without notice to the party aggrieved made additional findings. We thoroughly agree with the rule announced in the authorities cited, but are constrained to hold that they are not applicable to the case at bar.

In the instant case, the judgment recites:

"On the 24th day of Jan., 1918, being one of the judicial days of the January term of court, the cause came on to be heard in its regular order. * * * Whereupon, a jury having been waived and the court having read the pleadings and having heard the evidence and arguments, and having been duly requested to separately state his findings of fact and conclusions of law, took the said cause under advisement, and now on this 25th day of Jan., 1918, finds the material facts as follows: * * * "

Then follow the findings of fact, the conclusions of law, and the judgment of the court.

It does not appear whether plaintiff or defendants made the request for the special findings. If the request was made by plaintiff, and the court at the time judgment was rendered failed to make the special findings as requested, then it was the duty of the plaintiff to except to the failure of the court to make such findings, and to incorporate in the motion for new trial such failure as an error. On the other hand, if the plaintiff failed to make any request for special findings, then she is not in a position to complain.

There is no contention that the court did not on the 25th day of January, 1918, make the findings of fact and the conclusions of law as stated in the judgment; the contention being that the same bears the filing mark of the clerk approximately 30 days after the judgment had been rendered.

In Beck v. Finley, 77 Okla. 213, 187 Pac. 488, it is said:

"Under the provisions of section 5017, Rev. Laws 1910, either party may require special findings of facts and separate conclusions of law by making timely request therefor. Where no request is made until after the court has announced general findings and conclusions, the right will be deemed to have been waived."

In Rogers v. Harris, 76 Okla. 215, 184 Pac. 459, it is said:

"The opinion of the trial court, delivered in announcing judgment, does not constitute findings of fact, as contemplated under section 5017, Rev. Laws 1910, and may not be considered as such, or to vary the judgment of the court as contained in the journal entry. But when properly incorporated in the case-made, it may be considered in determining the correctness of the conclusion on which the judgment is based." See Smith v. Smith, 80 Okla. 136, 184 Pac. 82; Elwood Oil & Gas Company v. Gano, 76 Okla. 287, 185 Pac. 443."

The further contention is made by the plaintiff that there was error in the trial court in allowing the judgment in favor of the Farmers' Loan & Security Company against the plaintiff to be introduced in evidence; the ground relied on being that the defendants failed to show that there had been any service of summons on the plaintiff which would authorize the court to render the judgment against her; her contention being that she had never been served with summons. As to whether or not the plaintiff had ever been served, the judgment could not be attacked in this collateral way. The judgment as rendered recites: "That Virginia Johnson and Hollis Johnson were duly summoned, as by law required, came not but wholly made default."

In Rice v. Woolery, 38 Okla. 199, 132 Pac. 817, Mr. Justice Dunn, rendering the opinion, quotes with approval from Black on Judgments (2d Ed.) par 273, as follows:

"It commonly happens that the record itself will furnish evidence on the question of the jurisdiction of the court. And, notwithstanding some vigorous dissent, the great majority of the decisions hold (in the case of a domestic as distinguished from a foreign judgment) that if the record shows the facts necessary to confer jurisdiction, or recites that jurisdiction did in fact attach, its averments are final, and conclusive in every collateral proceeding, and cannot be contradicted by any extraneous evidence. This is in consequence of the great sanctity attached to judicial records by the common law and their 'uncontrollable verity.' It is said: 'If upon inspection of the record it appears that no notice has been given, the judgment or decree is void. On the other hand, if it be a judgment or decree of a domestic court of general jurisdiction, and the record declares that notice has been given, such declaration cannot be contradicted by extrinsic proof. In such cases the judgment or decree is sustained, not because a judgment rendered without notice is good, but because the law does not permit the introduction of evidence to overthrow that which for reasons of public policy it treats as absolute verity. The record is conclusively presumed to speak the truth, and can be tried only by inspection. This results from the power of the court to pass upon every question which arises in the cause, including the facts necessary to the exercise of

its jurisdiction, and as to which, therefore, its judgment, unless obtained by fraud or collusion, is binding, until reversed, on every other court. Hence a recital in a judgment that the original process was served on the defendant, or that publication (when allowed in lieu of service of process) was made, or that the party appeared by attorney or by answer, is conclusive when the record is collaterally put in issue, unless the recital is positively contradicted by the record itself."

The judgment of the trial court is affirmed.

HARRISON, C. J., and McNEILL, MILLER, and NICHOLSON, JJ., concur.