## MOORMAN et al. v. PETTIT et al.

No. 16690—Opinion Filed June 8, 1926.

**1. Appeal and Error—Questions of Fact—Conclusions of Findings in Equity Case.**

In chancery cases the court hears the oral testimony of the witnesses, and, like the jury, considers the witnesses, observes their intelligence and capacity, their fairness or bias, their manner or characteristics, and has the opportunity for judging the value of their testimony; and, therefore, the findings of fact are the same as the verdict of a jury, and will not be disturbed on appeal, unless manifestly against the weight of the evidence.

**2. Same.**

In a suit in equity, the Supreme Court on appeal is not at liberty to set aside the findings of fact of the trial court, unless after a consideration of the entire record, it appears that such findings are clearly against the weight of the evidence.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pawnee County; O. H. Searcy, Assigned Judge.

Action by Lucinda J. West Moorman, formerly Lucinda J. West, et al., heirs of Daniel West, against A. J. Pettit and Mary or Mollie E. Pettit, his wife, for cancellation of a deed, and ejectment, and accounting for rents and profits. There was judgment for the defendants, and plaintiffs appeal. Affirmed.

Wash E. Hudson, for plaintiffs in error.

McCollum & McCollum, for defendants in error.

Opinion by MAXEY, C. The facts in the case, as stated in plaintiffs' amended petition, alleged that one Daniel West, deceased, received a patent from the U. S. government, covering the following described property:

"All of the west one-half and the southeast quarter of section 17, township 20, north range 7 east of the Indian Meridian, containing 120 acres, more or less."

It was alleged in said petition that Lucinda J. West Moorman was the wife of Daniel West, deceased, and the other plaintiffs in error in this case are the surviving children of Lucinda J. West Moorman and Daniel West, deceased. The facts show that Lucinda J. West Moorman and her then husband, Daniel West, came into this state to homestead the above described property at the time that particular strip of land was opened for settlement. The said West and his wife and family lived on this property for several years, and until the year 1903, at which time Daniel West's health failed, and not being able to obtain medical relief where they were living, he went to Kansas City, Mo., for the purpose of being treated in a sanitarium, and his wife and children, whom he left on the farm, then moved to Winfield, Kan., and were joined there by Mr. West, after his

return from the sanitarium. The Wests, at the time of their departure from the farm in Oklahoma, left all their personal property and belongings and their furniture, live stock, etc., and had no intention of abandoning their farm as their homestead, but expected to return and make it their home, as soon as Mr. West's health would justify.

On or about the 26th day of July, 1904, and after Mr. West had left the hospital and returned to Winfield, Kan., the defendant A. J. Pettit visited them, and as plaintiffs claim, through certain false and fraudulent representations, and by the use of coercion and undue influence, induced Daniel West to execute to him, Pettit, a deed to the above described property, and plaintiffs contend that those false and fraudulent representations and acts of coercion were that Pettit represented to the deceased, West, that he was the owner of certain property situated in the state of Missouri, in a town known as New Conception, and that he was desirous of exchanging his Missouri property for land in Oklahoma; that he had learned of the land of Daniel West, and was desirous of exchanging his property in Missouri for this property of Daniel West; that he thought West's property was worth $1,-500, and they entered into an agreement by the terms of which West was to be given an opportunity of inspecting the property in Missouri, and Pettit was to go to Oklahoma to examine the land owned by West and his wife. Deeds were drawn up and executed and placed in escrow, until the parties had an opportunity to examine the lands. Pettit visited the land in Oklahoma and returned to see West and his wife, but they had not visited the land in Missouri, and West did not want to make the deed until after he visited the land. Plaintiffs alleged in their petition that Pettit insisted on West executing the deed to his land in Oklahoma, and according to plaintiff, Lucinda J. West Moorman's testimony, made certain threats that if West did not execute the deed, he would prosecute him. These threats, however, are not borne out by the testimony of the notary who was present at the time, and testified that West executed and acknowledged the deed freely, and that there were no threats or representations of any kind made. Mrs. West was working somewhere in the neighborhood, and Pettit and a notary public returned in the evening after she had gone home, and she executed the deed, and Pettit delivered them the deed to the property in Missouri. She testified that he used threats and even took her by the shoulder and turned her around and told her to sign the deed, or he would have her arrested and her husband sent to the penitentiary, and that she then signed the deed and asked him where the money was, and that Pettit threw the deed to the Missouri property down on the table and said: "That is all you will get out of it." These threats and the taking her by the shoulder and turning her around were denied by Pettit, and the notary said he was present at the time, and never heard any such remarks made, and never saw Pettit take her by the shoulder and turn her around and force her to sign the deed, but that, so far as he could see, she executed the deed voluntarily, and acknowledged that she did so. Pettit and his family moved on the land in controversy here soon after West and wife made the deed, and have resided on it ever since, and no complaint was ever made or any question raised about the legality of the deed executed by West and wife to Pettit for over 20 years, when oil was discovered on the land and there were several producing wells on the land. When it was made known to Mrs. West, who then lived in Ohio, that they had discovered oil on the land, and sometime after receiving such knowledge, she brought this suit. During all these 20 years she had made no complaint to anyone, and had not ever communicated to her children that the land was procured by fraud and misrepresentations. Mr. West died a year or two after the execution of the deed, and never made any complaint in his lifetime. The evidence shows that he was suffering from cancer at the time, and before the making of the deed, and at times suffered very greatly, but at other times, when the pain was not so great, he seemed somewhat normal. There was a great deal of testimony introduced as to West's condition prior to and at the time of execution of the deed. A doctor from the hospital where he was treated in Kansas City testified in the case, and described the trouble that West was suffering from, as cancer of the rectum, and told of his treatment while he was in the hospital in Kansas City. His testimony is couched in highly technical terms, as doctors usually give their testimony. This doctor's testimony was the only expert or medical testimony offered in the case. The other testimony as to West's condition before and after his going to the hospital was from neighbors and friends and relatives who visited him frequently, and knew of his condition after he left the hospital up to and at the time of his death. Some of them testified as to his condition about the time the deed was executed. Most of the witnesses testified that a great part of the time he did not seem to be suffering very much, and when he was lying down he seemed to be easy and talked rationally.

Some of the witnesses who testified were present at the time of the execution of the deed, and they thought he was perfectly rational and understood what he was doing and made no objection to anything.

The case was tried to the court, without a jury, and at the close of the testimony the court made its findings of fact and conclusions of law, which are set out in the record:

"1. The court finds that the deed executed by Daniel West and L. J. West, husband and wife, covering west half and southeast quarter of the northeast quarter of section 17, township 20 north, range 7 E. I. M. to the above-named defendant, A. J. Pettit, on the 26th day of July, 1904, the same being the deed in controversy in this case, was not obtained by said defendant, or said defendants, or either of them by fraud.

"2. That said deed was not obtained by said defendants, or either of them, by force, violence, menace or duress.

"3. That said deed was voluntarily executed by the said Daniel West and L. J. West for a good, sufficient, and valuable consideration.

"4. That the said Daniel West was physically and mentally competent at the time of the execution of the said deed to know and understand the nature and legal force and effect of said transaction, and the nature and legal force and effect of a written instrument such as said deed.

"5. The court finds that soon after the execution of said deed and delivery thereof to the defendants, the same was placed of record as by law provided, and that said defendants took possession of said premises and occupied the same by tenants continuously from the year 1904, until the institution of this suit, and during said time have executed various instruments on said premises such as mortgages, oil and gas leases, and have paid the taxes on said premises each year for the past 20 years; that said defendants have been in peaceable, continuous, exclusive, and open and notorious possession of said premises for more than 20 years.

"6. That said Daniel West died on the 14th day of October, 1905, and that the plaintiffs are his widow and children; that the youngest of said children became of age, that is, 21 years of age, about six years before the commencement of this action.

"7. That said plaintiffs nor either of them asserted or attempted to assert any right in said premises prior to the institution of this case.

"In view of the foregoing findings of fact, the court concludes as a matter of law, that the plaintiffs should take nothing in this cause, and that the defendants are entitled to have their title to said premises quieted as against the claims of said plaintiffs.

"O. H. Searcy, Assigned Judge."

On these findings of fact and conclusions of law, judgment was entered for the defendants, quieting the title to said land in A. J. and Mary E. Pettit, defendants, and enjoining the plaintiffs from setting up or asserting any right, title, or interest in said premises. Motion for new trial was filed and overruled by the trial judge, and the case was appealed to this court, with assignments of error and the case-made attached, and the findings of fact and conclusions of law are alleged to be erroneous under one assignment of error:

"That the findings of fact and conclusions of law by the trial court are not sustained by the evidence."

The foregoing assignment of error covers the whole question to be passed on by the court. This is a purely equitable case, and the findings of fact are governed by the rule laid down in a long line of decisions from this court. The trial court is the judge of the testimony, and its findings will not be disturbed by this court unless after a consideration of the entire record, it appears that such findings are clearly against the weight of the evidence.

There are two outstanding features in this case, that we think are decisive of the weight that should be given to the testimony: Lucinda J. West Moorman, the widow of Daniel West, the other grantor in the deed in question, was the only witness who attempted to testify to anything to support the allegations of the petition of fraud and misrepresentations and duress. Her testimony is not supported by a single witness nor any circumstance in the case, in our judgment. There was only one other person present, outside of herself and Daniel West, and that was the notary public, Mr. J. W. Hanlen. He does not corroborate Mrs. West in a single instance touching the question of misrepresentation, fraud, duress, etc., but, on the other hand, contradicts her entire statement, in that he said that there were no misrepresentations made by Pettit, and that there was no fraud or duress; that the whole transaction seemed to be perfectly agreeable, and that Mrs. West signed and acknowledged the deed without a word of protest. Fraud is never presumed, but must be proven as any other fact.

The other proposition is that Mr. West,

during his lifetime of two or three years after the execution of the deed, never mentioned any fraud, misrepresentations, or duress, and Mrs. West remained silent, not even telling her children of the alleged fraud, misrepresentation, and duress for over 20 years, and it was then after she had learned that oil had been discovered on the land they conveyed, and up to the time of bringing this suit, she had never complained to anyone about the sale of this land. As we say, these two outstanding facts, to our mind, are refutation of the allegations of misrepresentations, fraud, and duress. The whole case looks too much like a frame-up after they had smelled oil. These cases are common in this country, and many of them have reached the courts, that after the parties have made a sale and acquiesced in all that was done for several years, upon the discovery of oil commenced proceedings to avoid the sale upon some ground or other, and very few of these cases have ever been upheld by this court. The principles of law governing this case are too well settled to require the citation of many authorities. The case of Ellison v. Beanmabia, 4 Okla. 347, 46 Pac. 447, lays down what we regard as a correct rule in this case. In that case the court said:

"In chancery cases the court hears the oral testimony of the witnesses, and, like the jury, considers the witnesses, observes their intelligence and capacity, their fairness or bias, their manner or characteristics, and has the opportunity for judging the value of their testimony; and therefore the findings of fact are the same as the verdict of a jury, and will not be disturbed on appeal, unless manifestly against the weight of the evidence."

In a suit in equity, the Supreme Court on appeal is not at liberty to set aside the findings of fact of the trial court, unless after a consideration of the entire record, it appears that such findings are clearly against the weight of the evidence. Smith v. Skelton, 63 Okla. 116, 163 Pac. 268; Thomas v. Halsell, 63 Okla. 203, 164 Pac. 458. See, also, Weaver v. Drake, 79 Okla. 277, 193 Pac. 45.

In the case of Potter v. Ertel, 80 Okla. 67, 194 Pac. 201, the court said:

"In an equitable action, the findings of the trial court should be sustained unless it appears that his findings are clearly against the weight of the evidence. The findings of the trial court should be strongly persuasive, and should not be set aside unless the Supreme Court can say, in equity and good conscience, that the conclusion reached by the trial court is clearly against the weight of the evidence."

Many cases could be cited in support of these propositions of law, but we think this enough to call attention to the rule laid down in this jurisdiction.

There was a number of lay witnesses introduced to show the condition of health of Daniel West before and after the time of execution of the deed. These witnesses were neighbors and friends that saw him frequently and observed his condition, and talked with him, and there was none of them but what thought he was in a condition most of the time to transact business. One of these witnesses was a grocer and butcher who lived within a block or two of West, and he said West visited his store almost every day and traded with him, and on several occasions told him about owning some land in Oklahoma that he wanted to sell or exchange for property somewhere else, and on one occasion mentioned to him that Mr. Pettit and he were on a trade, and that he learned afterwards that he and Pettit had traded. He said he saw nothing unusual about Mr. West, that he talked rationally, and seemed to know what he wanted, and so far as he could see was perfectly capable of transacting his business. The doctor who treated Mr. West in the sanitarium in Kansas City testified in the case, but his treatment of West covered only a short time, and his testimony was largely hypothetical and conjectural; and we agree with the trial court that the testimony of these lay witnesses, that were with him almost every day and talked with him about various matters, was entitled to more credence than the testimony of this expert witness who only treated him for a short time some time before he died, and had not seen him for something like a year after he quit treating him until he died.

Upon a consideration of the entire record, we cannot say that the judgment of the trial court is against the weight of the evidence. On the other hand, we think that the judgment of the court is amply sustained by the evidence. It is our opinion, therefore, that the judgment of the trial court should, in all things, be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 897 §2868; p. 900 §2869. (2) 4 C. J. p. 900 §2869. See 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81.