SNEED et al. v. PITTS.

No. 31804. Dec. 5, 1944.

Rehearing Denied Jan. 23, 1945.

Application for Leave to File Second Petition for Rehearing Denied Feb. 20, 1945.

*154 P. 2d 69.*

A. S. Wells, of Seminole, and Hugh Nolan, of Okemah, for plaintiffs in error.

Earl Pruet, of Oklahoma City, Tom Anglin, of Holdenville, and M. R. Baker, of Oklahoma City (Richardson, Shartel, Cochran & Pruet, of Oklahoma City, and Anglin, Stevenson & Huser, of Holdenville, of counsel), for defendant in error.

WELCH, J. Pitts as plaintiff filed this action to establish in himself one-twelfth (1/12th) interest in an oil and gas operating contract and for an accounting.

The substance of his claims is that defendant Tandy furnished certain geological information to defendant Sneed and that Sneed contacted plaintiff upon the proposition of procuring oil and gas leases in a vicinity which appeared a likely field for the production of oil and gas.

Plaintiff and defendant Sneed entered the field and procured certain leases in the name of Sneed which were later assigned to a Mr. Malernee. Pitts asserts that it was the intention of plaintiff and defendants to procure production if possible, and that he and Sneed were to divide any profits from bonuses to be made from any difference between the purchase and the selling price of leases, and that he, Tandy, and Sneed were to share equally in other benefits which might be derived from production. Defendants answered denying any such intention or agreement, and at the close of plaintiff's evidence amended their answer so as to show as follows:

"The defendants and each of them alleges that on or about the 20th day of December, 1940, an oral agreement was entered into by and between the plaintiff and the defendants, whereby the plaintiff would take whatever commission was due him at the time and release and relinquish any claim he might have in the seven-eighths working interest in this leasehold estate; further conditioned, that the defendants would give to the plaintiff, as a part of the consideration therefor and his release of his claim in the seven-eighths working interest, the exclusive right, in so far as the defendants were concerned, to buy and sell royalties under this particular block; and that such an agreement was had; and that from and after that time the plaintiff had no right in the seven-eighths working interest in the leasehold estate and the defendants had no right to purchase, buy or sell any royalty under this block; and that by reason thereof, the defendants deny that the plaintiff is entitled to any relief at the hands of this court; and we move that amendment be allowed, to conform to the proof."

Plaintiff admitted having delivered to Sneed a letter substantiating the above amendment, but asserted that same was obtained by fraud.

The trial issues were whether the parties ever had an agreement as claimed by plaintiff, and if so, whether plaintiff relinquished any and all interests in the leases as claimed by defendants.

Whatever the agreement, there is no dispute that Pitts and Sneed procured leases in Sneed's name on 160 acres at $5 per acre to be placed with a bank with draft attached. Neither Pitts nor Sneed had funds to pay the draft and they then set out to interest some one to provide such funds. It seems fairly certain from the evidence that Pitts procured an agreement from one man to take over these leases at $10 per acre, and with the further agreement to drill a well and allow the lease takers, in addition, a one-fourth working interest after certain expenses paid, but when it became necessary to take up the drafts that gentleman could not be immediately reached, whereupon Pitts and Sneed contacted Mr. Malernee.

There is some disagreement in the evidence as to the exact agreement

had at that time with Mr. Malernee, but no dispute that he did agree to honor a draft drawn by Sneed for $1,200 to take up leases covering 120 acres. The other 40 acres were taken over by Tandy as his own property upon payment by him of the purchase price of $200, as per agreement of the parties herein. Sneed and Pitts equally divided the $600 bonus profits on the 120 acres.

Plaintiff's evidence is to the effect that at that time it was orally agreed that Mr. Malernee was to take all the leases to be assembled in the area at $10 per acre bonus, and when assembly was complete to drill a well, and if production obtained, to assign to these parties a one-fourth working interest after payment of certain expenses. Defendants' evidence is that at the time, Mr. Malernee merely loaned Sneed the bonus money with assignment of the leases as security, with the understanding that Mr. Malernee would have "first chance" if he should decide to develop the leases.

Some 800 acres of leases were assembled by Sneed and Pitts in substantially the same way, Sneed and Pitss dividing equally some $800 additional bonus profits. One lease, however, was finally closer by Mr. Malernee and payment made direct by him upon which Sneed and Pitts divided no profits.

Those activities covered the period from about the middle of November to the 20th of December, 1940, on which date Mr. Malernee orally agreed with Sneed that he would develop the lease properties, and in about August, 1941, Mr. Malernee brought in a nice producer thereon.

Thereafter, and on September 14, 1941, Mr. Malernee entered into a written operating agreement with defendants Tandy and Sneed whereby Tandy and Sneed would receive one-fourth of the profits of production after certain expenses paid. Prior to entering into such written agreement Mr. Malernee had procured, through Sneed's efforts,

the letter from plaintiff to the effect that plaintiff claimed no interest in the leases. Payments to Tandy and Sneed under the operating agreement were commenced in about April, 1942, and to the time of suit in January, 1943, they had received approximately $41,000 therefrom.

The cause is of an equitable nature and if the findings of fact are supported by clear and convincing proof and not against the clear weight of all the evidence, the trial court's judgment will be affirmed. McAfee et al. v. Harden, 180 Okla. 546, 71 P. 2d 463; Putnam City v. Minnetonka Lbr. Co., 95 Okla. 149, 218 P. 1061; Moorman v. Pettit, 119 Okla. 22, 248 P. 838.

Pitts testified clearly, unequivocally, and, at least to some extent, convincingly, to the effect that it was the agreement of these parties that they were to share equally in any income which might be derived from production. Another witness testified to statements made by Sneed indicating that Pitts was interested in the leases and the outcome of the explorations. Pitts participated in the procurement of practically all the leases and participated in the initial negotiations with Mr. Malernee in their efforts to get some one to take the leases from the bank. He testified that an oral agreement was had with Mr. Malernee at the time it was agreed by him to furnish the money for the first leases that he would develop the leases, which he later did do. Though such additional agreement was then had is denied by Sneed, it is not denied that Mr. Malernee expressed some intrest in probable development and was assured that he would have "first chance." Sneed admits that he had such agreement with Pitts if Pitts procured the property to be developed. Sneed's position and testimony is to the effect that Pitts did not procure the development, and that, in any event, Pitts was "out" of the deal on December 20, 1940, at which time Mr. Malernee definitely agreed to develop the leases.

We do not find this record such as to warrant us in concluding that Pitts'

version of the agreement of these parties to share the profits of developments three ways, as found by the trial court, is against the clear weight of the evidence or lacking in clarity.

As concerns the issue and defense interposed to the effect that Pitts had relinquished all interest in these leases, there is much serious conflict in the evidence.

Sneed's version is that about December 20th to 23rd, Pitts expressed displeasure that Mr. Malernee was allowed to take a certain lease upon a bonus cost basis, thus providing no profit in that respect, and that he expressed a desire to get out of the leasing end of the deal and a willingness to so do and to relinquish any claim in the lease matters if Sneed would then pay him his part of the bonus profits then due and allow him the "royalty play" without competition from Tandy and Sneed; that such agreement was had, Sneed then giving Pitts a check for some $400 due on bonus profits. There is in evidence a letter dated September 4, 1941, addressed to Sneed and signed by Pitts acknowledging payment in full for his services in assembling the leases and releasing all interest therein.

Plaintiff's testimony directly contradicts defendants in respect to any such agreement to "get out" and release any claim of interest in the leases.

In explanation of the letter he states that Sneed continuously informed him that he was trying to get Mr. Malernee to give them a written operating agreement; that it would be best that he, Sneed, handle these matters alone with Mr. Malernee; that he was very peculiar and hard to deal with; that he would not sign an agreement with Pitts as an interested party; that the only way he could get the agreement out of Mr. Malernee would be for Pitts to give him such letter, but that he was assured that he would be protected in his interest after written agreement was obtained from Malernee, and that he believed and relied upon Sneed.

Plaintiff's testimony in that regard is clear and unequivocal. Though there is sharp conflict in his evidence and that of defendants, there are many facts and circumstances supporting plaintiff's version of the matter. Plaintiff's testimony is not inherently improbable. The trial court was best able to observe the witnesses and determine the truthfulness or untruthfulness of their testimony. We are unable to say from an examination of the whole evidence that the findings and judgment of the trial court are against the clear weight thereof.

Affirmed.

CORN, C.J., GIBSON, V.C.J., and RILEY, OSBORN, BAYLESS, and ARNOLD, JJ., concur. HURST, J., dissents. DAVISON, J., not participating.